UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHY JOHNSON BOWLES,

                              Plaintiff,

                                                          Case # 21-CV-06048-FPG

v.

                                                          DECISION AND ORDER

THE STATE UNIVERSITY OF
NEW YORK AT GENESEO, et al.,

                              Defendants.

## INTRODUCTION

Plaintiff Kathy Johnson Bowles ("Plaintiff") filed this civil rights action to recover damages for violations arising out of her employment as Vice President for College Advancement ("Advancement VP") with the State University of New York at Geneseo ("Geneseo") and as Executive Director of The Geneseo Foundation , Inc. ("Foundation").

Plaintiff has brought sixteen causes of action arising under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1985, 42 U.S.C.§ 2000e, *et seq*. ("Title VII"), Article I, Section 1 and Section 8 of the New York State Constitution, Article 15 of the New York Human Rights Law ("NYSHRL"), and various common law claims.

Plaintiff has sued the State University of New York ("SUNY"), Geneseo, and four members of Geneseo's administration and/or faculty: President Denise Battles ("Battles"), Assistant Vice President for Human Resources Julie Briggs ("Briggs"), Professor David Levy ("Levy"), and Professor Harry Howe ("Howe").[1]

---

[1] SUNY, Geneseo, Battles, Briggs, Levy, and Howe will be referred to collectively as the "State Defendants."

Plaintiff has also sued the Foundation and five members of the Foundation's Board: John Camiolo ("Camiolo"), Kevin Gavagan ("Gavagan"), John Gleason ("Gleason"), Daniel Loughran ("Loughran"), and Robert Walley ("Walley").[2]   In addition, she has named Defendants John Doe(s) and Jane Doe(s) "as persons not yet known to [Plaintiff], whose names will be added once their identifies are ascertained."  ECF No. 23 at 6.

Presently before the Court are the Board Defendants' motion to dismiss Plaintiff's Amended Complaint and the State Defendants' motion to dismiss Plaintiff's Amended Complaint. ECF Nos. 27, 30.  For the reasons set forth below, the Board Defendants' motion is GRANTED IN PART and DENIED IN PART and the State Defendants' motion is GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

When courts evaluate motions to dismiss, they must accept the facts alleged in the complaint as true and draw all reasonable inferences from those facts in  favor of the non-moving party.  *Nat'l Fed. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 567 (D. Vt. 2015).  Therefore, for the purposes of evaluating Defendants' motions, the facts below are taken from Plaintiff's Amended Complaint and are accepted as true.

## I.     Relationship Between Geneseo and the Foundation

Plaintiff was employed by Geneseo as Advancement VP and was "simultaneously employed by [the Foundation] as its Executive Director."  ECF No. 23 ¶ 1.  Geneseo and the Foundation entered into an agreement or agreements under which Geneseo "contributed personnel—including [Plaintiff]—to the Foundation, who then worked for the Foundation."  *Id.* ¶ 2.   Thus, while Geneseo paid Plaintiff, it "shar[ed] with the Foundation other employer

---

[2] The Foundation, Camiolo, Gavagan, Gleason, Loughran, and Walley will be referred to collectively as the "Board Defendants."

responsibilities," including providing input for performance evaluations and retaining the authority to hire and terminate.  *Id.*

Plaintiff alleges that Geneseo and the Foundation "acted jointly/in concert in deciding to hire and terminate [Plaintiff], and affected the terms and conditions of her employ."  *Id.* ¶ 3. Plaintiff further alleges that, although Geneseo and the Foundation are "[o]rganized as distinct entities," they in fact "operate so closely in practice as to be effectively indistinguishable."  *Id.* ¶ 4.  As evidence of the closeness of this relationship, Plaintiff attached to her Amended Complaint as "Exhibit A" an agreement entitled "SUNY COLLEGE AT GENESEO – GENESEO FOUNDATION."  ECF No. 23-1.  Plaintiff further alleges that, under that agreement, "*more than twenty (20)* Geneseo employees," in addition to Plaintiff, "were assigned to the Foundation"; the Foundation must act in accordance with Geneseo and SUNY policies; the Foundation's office is in the same building as Geneseo's administration; the Foundation's address includes "State University of New York College at Geneseo"; the Foundation is Geneseo's "fundraising arm," and serves "as a means of receiving and managing gifts and making these revenues available to [Geneseo]"; and the Foundation performs certain services and activities exclusively for Geneseo's benefit.  ECF No. 23 ¶ 6.

Plaintiff also makes allegations in support of the conclusion that, in addition to Geneseo, the Foundation is also her employer.  Specifically, she alleges that the Foundation listed Plaintiff on its "annual Forms 990" under "Officers, Directors, Trustees, Key Employees and Highest Compensated Employees."  *Id.* ¶ 7.  She further alleges that the work she performed for the Foundation "was independently and solely directed, supervised, and approved by Foundation Board members."  *Id.*  Plaintiff also had "signatory rights for all Foundation contractual obligations" due to her role "[a]s an executive or 'key' employee of the Foundation."  *Id.*

**II.      Plaintiff Was Paid Less Than Her Male Predecessors Despite Being More Qualified**

Geneseo and the Foundation hired Plaintiff in July 2016 after conducting a national search. *Id.* ¶ 34. At that time, Plaintiff was 52 years old and she became the first woman "[i]n the entire history of [Geneseo] and Foundation" to serve as Advancement VP "in a permanent capacity." ECF No. 23 ¶ 34.

Despite being more experienced and qualified than her male predecessors, "the defendants" paid Plaintiff less compensation. *Id.* ¶ 40. For example, Plaintiff was paid $205,624 in 2017 while her male predecessor was paid $246,821 in 2016 even though he was less experienced and did not have an advanced degree. *Id.* ¶¶ 35-38  At the time she was hired, Plaintiff held undergraduate and graduate degrees and had "27 years of experience in higher education, including work as a faculty member, department head, Assistant Vice President of Corporate and Foundation Relations, and Vice President for Advancement, with substantial experience in supervision, fundraising, alumni relations, communications, and board oversight." *Id.* ¶ 38. In contrast, her male predecessors "had less experience and no terminal degrees." *Id.* ¶ 40. In addition, Plaintiff did not receive compensation for her "additional duties" as the Foundation's Executive Director despite the fact that, "upon information and belief," "the male Executive Directors preceding [Plaintiff]" were compensated for such duties. *Id.* ¶ 87.

Plaintiff "often discussed . . . the disparate treatment of her versus her male predecessors" with Defendants Battles and Briggs, as well as with "other cabinet members." ECF No. 23 ¶ 39. Gavagan, who was the Chair of the Foundation at the time Plaintiff was hired, along with "the full Board," "approved compensation for prior Advancement VPs." *Id.* ¶ 41. Gavagan continued to serve as Chair during Plaintiff's first year of employment until Gleason became Chair. *Id*  Gleason

had also served on the Search Committee and, "[a]s a member of the Search Committee and Chair-Elect, [he] knew the compensation of prior Advancement VPs." *Id.*

## III.     The Foundation and its Board Members Cultivated a "Boy's Club" Atmosphere

Much of Plaintiff's Amended Complaint centers around what she alleges was a hostile work environment propagated by the Foundation and its Board members.

During Plaintiff's tenure with Geneseo and the Foundation, the Foundation's Board was "[c]omprised overwhelmingly of affluent white males" who "routinely referred to their Board as the 'Boys' Club.'" *Id.* ¶¶ 5, 66.  When Plaintiff commented on the lack of Board member diversity, "particularly the lack of women," to Battles and others at Geneseo, their remarks suggested familiarity with  the Foundation's "strongly gendered environment."  *Id.* ¶¶ 43, 126.  For instance, Battles said to Plaintiff in reply on one occasion, "[Y]ou thought you had left the South."  ECF No. 23 ¶ 43.  Former Board member Jennifer Dunlap told Plaintiff, "[W]elcome to the Boys' Club."  *Id.*

### A.  The Board Members' Conduct

Plaintiff alleges that the members of the Foundation's Board "regularly engage in misconduct with utter impunity."  *Id* ¶ 126.  Prior to a January 2017 Foundation meeting in New York City, Plaintiff was "warned" by a Geneseo employee "that Board members 'can be handsy.'" *Id* ¶ 44.  At that same time, another individual named Ronna Gilliam "recounted a sexual incident between a former employee and [Camiolo] at the June, 2016 Alumni Reunion."[3]  Plaintiff alleges that the Board members "regularly hugged and kissed her on the cheek, though she neither initiated nor approved of such intimate physical contact."  *Id.* ¶ 45.

---

[3] Whether Ronna Gilliam is employed by, or affiliated with, Geneseo is unclear from the Amended Complaint and there are no other allegations related to her.

For instance, at a Geneseo alumni event in June 2018, "Camiolo kissed [Plaintiff] on the mouth" and "[c]ontrary to [his] later claims, the kiss was not an awkward mistake, but rather an intentional act directed against [Plaintiff], before a crowd that included [his] fraternity brothers." *Id.* ¶ 65.  Plaintiff also specifically points to Geneseo events held in October 2018 as examples, during which she alleges she "was kissed and hugged . . .by several male Board members, including . . . Walley, Gavagan, . . .Camiolo, . . . and Gleason."  ECF No. 23 ¶ 96.  Furthermore, Plaintiff alleges that, "[o]n March 21, 2019, two female employees in [her] Division complained to her that [Camiolo] had harassed and intimidated them, causing emotional distress."  *Id.* ¶ 113.

Plaintiff's Amended Complaint includes several other allegations regarding the Foundation and its environment.  Plaintiff alleges that, in 2017-2018, "Gavagan sought to intimidate [her] into hiring a young white male friend on several occasions" even though doing so "would have violated policies and procedures regarding fair hiring practices."  *Id* ¶ 95.  In response to Plaintiff's refusal, Gavagan "berated her by telephone" and "sent angry emails."  *Id.*

During an April 2018 Foundation Board meeting, outgoing Board member Dunlap was "recognized for her efforts to change the Board from a 'Boys' Club.'"  *Id* ¶ 67.  In response, Foundation Board Chair emeritus Jack Kramer and "other Board members" laughed.  *Id.*

In October 2018, Loughran "infantilized [Plaintiff] by calling her a 'petty junior high girl' because she had not allowed the Men's Ice Hockey coach, a white male, to break procedures, policies, protocols, and best practices."  *Id.* ¶ 91.  In the wake of this incident, Loughran "retaliated against and prevented [Plaintiff] from performing her job by refusing to meet with her, and by ignoring requests regarding official [Foundation] business."  ECF No. 23 ¶ 94.

That same month, during a "Committee on the Board" meeting, a discussion ensued regarding Foundation Board member nominations during which Gleason stated, "Do we really

want diversity?" *Id.* ¶ 82.  In reply, Walley stated, "We can have diversity or money: not both."
*Id.*  Plaintiff told Gleason and Walley that these "highly discriminatory, demeaning, and distressing
comments" were "inappropriate and false."  *Id.*

In response "Gleason and the Board retaliated against and intimidated [Plaintiff], by
criticizing her and suggesting she should be replaced, though she had achieved all established
goals." *Id* ¶ 83.  The "defendants" also "retaliated against and sought to discourage [Plaintiff] by,
among other things" imposing "overwhelming demands."  *Id* ¶ 84; *see also id.* ¶ 79.

## B. Treatment of Plaintiff Compared to Male Predecessors, Subordinates, and Successors

In addition to their physical conduct and verbal comments, Plaintiff alleges that the
Foundation's "strongly gendered environment" is evidenced by how they treated her as compared
to her male subordinate and male successor.  Plaintiff hired Justin Johnston, "who is male and was
in his early thirties at the time," in 2017.  ECF No. 23 ¶ 46.  Johnston developed some performance
issues and ultimately "failed to address [an] assignment."  *Id.*  Although Plaintiff had the authority
to supervise Johnston, "the defendants sided with Mr. Johnston and against [Plaintiff] in this
situation, and consistently throughout her tenure."  *Id.*

When Plaintiff was on leave from work pursuant to the Family Medical Leave Act
("FMLA") in "late 2018 and early 2019," Battles appointed Johnston as Interim Advancement VP
in Plaintiff's stead.  *Id* ¶ 85.  During that time, and "[w]ithout a valid basis, the [Foundation's
members] consistently favored [Johnston] over [Plaintiff]."  *Id* ¶ 86.  They "lessened [their]
requirements and oversight" by, among other things, not requiring Johnston to regularly make calls
to Foundation Board members and no longer requiring "complex agendas." *Id* ¶ 85.  Johnston was
also "compensated for his additional duties," even though he had "far less experience than
[Plaintiff]" and it was "unclear what additional duties he actually had."  ECF No. 23 ¶ 87.  In

December 2018, when Johnston acted outside of "disbursement policies and procedures," he was "not disciplined for such transgressions" which Plaintiff alleges "confirms defendants' oral admissions that they created, fostered, and maintained a 'Boys' Club' environment." *Id.* ¶ 105.

Plaintiff also alleges that the manner in which the Foundation Board members treated her was different than that of her male predecessors and successors. Since Plaintiff's departure from Geneseo, "there have been, upon information and belief, three Advancement [VPs]," one of whom had been "known to scream and curse" during team meetings and Cabinet meetings, "including yelling and pounding his fist on tables." *Id.* ¶ 45. Despite behaving in this manner, his "outrageous, hostile conduct was never addressed by [Geneseo], employees, or Foundation Board members." *Id.*

In contrast, during Plaintiff's time serving as Advancement VP, "Board members told [her] to be 'less confident,' 'softer.'" *Id.* ¶ 45. In the spring of 2018, she understood comments made by Gleason that she had "better perform or else" to "indicate[ ] that he wanted her to act stereotypically feminine," since she was "already performing the duties of her position" and was being instructed by Walley to "show more emotion," "be less serious," and "let us solve your problems." ECF No. 23 ¶ 68. Plaintiff alleges that Gleason's "threat was in retaliation for complaints that [Plaintiff] had made against the Foundation Board and [Professor] Harry Howe." *Id* ¶ 68.

Another way in which Plaintiff alleges she was treated differently by the Foundation Board members compared to "previous[ ] . . . male Vice Presidents" is that, in August 2018, Board members requested to "be allowed to participate *personally* in [Plaintiff's] performance evaluation." *Id* ¶ 76 (emphasis in original) Plaintiff alleges that this request was "telling" because

she "had met all goals." *Id.* She further alleges that this "unusual request was retaliation for [her] complaints of unlawful discrimination and other protected activity." *Id*

Plaintiff alleges that she was treated in a manner that differed to such a degree that "even . . . her staff had noticed that the [Foundation Board members] treated her differently than her male predecessors." *Id* ¶ 70.

### C. Foundation and Board Members "Effectively Demoted" Plaintiff

Plaintiff alleges that, while she was out on FMLA leave, the Foundation "removed [Plaintiff] from its communication platform, and destroyed her Foundation-issued credit card, in further retaliation, thereby effectively demoting her as the Foundation's Executive Director." ECF No. 23 ¶ 108. In addition, she alleges that she was "prevented . . . from doing her job" because the Board Chair "requested information from [her] regarding issues that suggested she would be terminated" and "stopped meeting with her for regularly scheduled calls." *Id.* This she alleges "was, in effect, another demotion." *Id.*

Plaintiff additionally alleges that she was "effectively demoted" in January 2019 when "the defendants stopped providing [her] with agendas or minutes from Cabinet meetings, though she remained a member of the Cabinet." *Id.* ¶106. Plaintiff alleges that this action was taken "in retaliation for her complaints of discrimination." *Id.*

### D. Foundation and Board Members' Role in Plaintiff's Termination

Plaintiff alleges that, in January 2018, the Foundation Board members "met in executive session for almost a full day, discussing whether to fire [Plaintiff]." ECF No. 23 ¶ 62. However, Plaintiff does not allege that she was in fact terminated at that time. Rather, she was terminated in March 2019 and the decision to terminate "was made by the president of another SUNY university—a friend of President Battles." *Id.* ¶ 114.

Plaintiff alleges that vesting termination authority in "an outsider" was done "as a pretextual effort by defendants to avoid responsibility for their own violations of law and other misconduct." *Id.* ¶ 115.

## IV.   The Foundation's "Boy's Club" Atmosphere "Bled Over" into Geneseo

Plaintiff alleges that "the Board's strongly gendered environment appears to have bled over into [Geneseo] (including [President Battles'] office)." *Id* ¶ 126.

Plaintiff alleges that when she "sought to facilitate changes at [Geneseo] for greater diversity and inclusion," an employee said in response, "We don't know those people." *Id* ¶ 74. In addition, Geneseo Alumni Relations employees "actively defied [Plaintiff's] efforts to increase inclusivity" and said that Plaintiff "made them 'feel guilty for being white.'" *Id*

### A.  Plaintiff "Conveyed Her Concerns About Discrimination" to Geneseo Officials

Plaintiff's Amended Complaint contains numerous allegations that she notified Battles and others at Geneseo about her concerns regarding the Foundation's culture and the Board members' conduct.  For instance, Plaintiff alleges that "[d]uring several conversations in September and October of 2018, [she] . . . conveyed her concerns about discrimination to [Geneseo] and Foundation officials,"  ECF No. 23 ¶ 90, and her allegations include specific instances during which she informed Geneseo employees, including Geneseo's Chief Diversity Officer, of her distress regarding the Foundation and its Board members. *See, e.g.*, *id.* ¶¶ 39, 70, 103.

In addition, Plaintiff points to several instances in which she informed Battles of the Foundation Board members' "disparate treatment of [her] compared to her predecessors" and "requested [Battles'] assistance in rectifying the discrimination" but Battles "did nothing and the discrimination continued." *Id* ¶ 77.  Plaintiff's allegations include a "one-on-one" meeting with Battles in March 2018 during which she "expressed her concerns about the [Foundation Board

members'] discriminatory conduct." *Id* ¶ 64.  In reply, Battles stated, "They are your problem," told Plaintiff that she was "not likeable," and instructed her to "be more likeable." *Id.* ¶ 64.  This response made Plaintiff "extremely upset" and she understood this message to mean "that she should allow the Board members' physical advances." *Id.*

Plaintiff also expressed concerns about the Foundation Board members' conduct to Briggs. ECF No. 23 ¶ 70.  But, again, "defendants took no action" in response to Plaintiff's complaints. *Id*

### B.  Geneseo Placed Plaintiff on Administrative Leave

On November 20, 2018, Plaintiff was placed on "administrative leave" and Geneseo commenced an investigation that focused on "[Plaintiff's] working relationship with [Johnston], and alleged wrongdoings by [Plaintiff], arising out of a planned trip to Virginia, which was partially personal, while also including meetings with donors." *Id.* ¶ 97.  Plaintiff alleges that this suspension and investigation were "in retaliation for [her] protected conduct, including without limitation, her longstanding complaints regarding sexual harassment and other unlawful discrimination against her and others at [Geneseo] and/or Foundation." *Id.* ¶ 127.

Later that month, the investigation concluded "with the only remaining task being an interview of [Plaintiff]." *Id.*  ¶ 102.  "At about that time, [Plaintiff] was removed from work by her physicians, due to physiological/medical issues resulting from stress and anxiety caused by defendants[ ]." *Id.*  Plaintiff went out on FMLA leave without the interview having been conducted.

Plaintiff returned from FMLA leave on February 11, 2019 and "submitted to [Geneseo's] demand for a meeting the very first day that she returned from her medical leave." ECF No. 23 ¶ 109.  Briggs conducted an interview of Plaintiff regarding the investigation which concluded at

the end of November 2018.  Plaintiff alleges that "Briggs's threatening, intimidating interrogation

. . . at this time was retaliation for [Plaintiff's] then recently filed [Division of Human Rights]

Complaint against [Geneseo], which also named [Briggs and Battles]."  *Id.* ¶ 112.

**V.      The "Rotondo Matter"**

In a seemingly unrelated set of events, Plaintiff brings claims against Geneseo Professors

Howe and Levy arising from incidents that occurred in the wake of Geneseo firing Dean Denise

Rotondo ("Rotondo")  Plaintiff's role, if any, in Rotondo's termination is unclear form the

Amended Complaint.  In early 2018, Battles had recently dismissed Rotondo.[4]  *Id.* ¶ 50.  Howe,

"in a pre-meditated effort with . . . Levy, . . . angrily accosted [Plaintiff]" regarding this dismissal.

*Id.*  "Howe acted aggressively, physically threatening [Plaintiff], and warning that harm would

befall her and her career if she did not resign from her position as Vice President."  *Id.*  At some

point in time after this encounter, "Howe emailed [Geneseo] personnel, stating that he was glad

his threats caused [Plaintiff] to become physically ill."  *Id.*

Plaintiff notified Battles and Briggs of this incident "immediately."  *Id.*  In response, six

days later, Plaintiff was "merely told" that "the appropriate administrative action has been taken."

*Id.*  Geneseo also responded by assigning a police officer to escort Plaintiff.  *Id.*

Despite an instruction from Briggs that both the "Rotondo matter" and Plaintiff's

complaints against him were confidential and not for public discussion, Howe "sent emails

(including using a campus list serve forum) to numerous employees, alumni, and students

demanding [Plaintiff's] termination  and soliciting support for his efforts."  ECF No. 23 ¶ 51.  In

---

[4] The Amended Complaint does not include any other background on, or allegations related to, Dean Rotondo.  The Court understands that it was her dismissal that, for one reason or another, set off alleged hostile actions toward Plaintiff but any additional factual background, such as why Rotondo was dismissed, was not a part of Plaintiff's Amended Complaint.

addition, Howe sent an emails to Advancement and Communications Division employees "intimating violence if [Plaintiff] did not resign." *Id.*

Howe went on to record a lecture to his students regarding the Rotondo matter and "publicly criticized [Plaintiff] and President Battles." The lecture, which "included a PowerPoint presentation with large photographs of both women," was published to YouTube. *Id.* Howe also "posted" about the Rotondo matter on Twitter "at least 160 times, and created a Change.org petition, often seeking to go viral." *Id.* ¶ 52. In addition, Howe "encouraged and facilitated" students in Geneseo's School of Business wearing "specially designed t-shirts about the matter." *Id.* Howe was also quoted in a campus newspaper about "the situation." *Id.*

In April 2018, Howe "unexpectedly" appeared at a Finance Committee meeting despite the fact that he "was not invited and had no role there." ECF No. 23 ¶ 53. Howe "sat down and stared at [Plaintiff] in a menacing manner." *Id.* Camiolo, who was serving as Finance Committee vice Chair, told Plaintiff to ignore Howe and "tried to calm her" since she was "visibly upset." *Id.* Camiolo later criticized Howe, "noting that he engaged in such action intentionally." *Id.* Battles encouraged Plaintiff to "document the incident." *Id.* Plaintiff did indeed document the incident "to [Battles] and to [Briggs], but upon information and belief, no further action was taken." *Id.*

### A. Plaintiff Informs Battles She Feels Threatened

Plaintiff discussed with Battles "many times" that she "[felt] physically threatened by [Howe]." *Id.* ¶ 55. These discussions included when the two spoke about it during a May 6, 2018 dinner in Boston and an April 17, 2018 incident at a campus event. *Id.* Battles expressed that she, too, felt threatened by Howe. Plaintiff explained to Battles that she "had installed the motion detection-recording device Ring at her home because she feared for her safety." *Id.* The two also discussed security at Battles' residence with the Interim Vice President for Finance and

Administration.   During October 2018, Plaintiff and Battles discussed how to limit Howe's attendance at donor recognition events, including an event at Battles' home, and the two "considered whether campus police should be present at the events" as a security measure.   ECF No. 23 ¶ 57.

### B.  Howe's NYSDHR Claim and Continued "Attacks"

In early April 2018, Howe filed a claim with the New York State Division of Human Rights, "which was ultimately dismissed."  *Id.* ¶ 57.   During a proceeding related to that claim, Levy "admitted that the accosting of [Plaintiff] and threats against her were pre-meditated.   He also testified that to his knowledge, previous Advancement Vice Presidents had not been treated in this matter."  *Id*   During this proceeding, Plaintiff expressed that "she had been the victim of gender/sex discrimination, for which she drew criticism and ire from [Briggs] and [Battles]."  *Id.*

Howe's "attacks" on Plaintiff continued throughout 2018 and they persisted after her departure from Geneseo.  *Id.* ¶ 58.  Plaintiff received a "threatening email from [Howe]" during a 2018 Cabinet meeting.  *Id.* ¶ 59.   That email "impl[ied] that there would be violence unless [Plaintiff] resigned."  *Id.*   Despite this threat, Battles and Briggs "determined to do as little as possible in response . . . thinking that it would lessen [Howe's] ability to take action against [Geneseo]."  *Id.*

In May 2019, Howe gave a presentation to the SUNY Board of Trustees during which he "continued his harassment with false accusations and intent to harm [Plaintiff]."  *Id.*   In addition, he made such statements to the *Livingston County News*.   ECF No. 23 ¶ 58.   Despite their awareness of "the hostile work environment that [Howe] created," the "[D]efendants . . . persistently and repeatedly failed to respond," and "even conferred upon Howe the SUNY Distinguished Teaching Professor award in November of 2019."  *Id.* ¶ 60.   Despite "bearing the

responsibility of a collegiate board," the Board Defendants "fell well short of taking appropriate action," even though they knew "of the hostile work environment created by [Howe and Levy]." *Id.* ¶ 61.

In January 2021, Plaintiff filed the present action.  The operative complaint is the Amended Complaint filed in April 2021.  ECF No. 23.  In the Amended Complaint, ECF No. 23 at 29-38, Plaintiff raises the following claims against all Defendants:

(1) Disparate treatment pursuant to § 1983 and the Fourteenth Amendment;

(2) Hostile work environment pursuant to § 1983 and the Fourteenth Amendment;

(3) Retaliation pursuant to § 1983 and the Fourteenth Amendment;

(4) Disparate treatment pursuant to Title VII;

(5) Hostile work environment pursuant to Title VII;

(6) Retaliation pursuant to Title VII;

(7) Disparate treatment pursuant to Article I, Section 1 of the New York Constitution;

(8) Hostile work environment pursuant to Article I, Section 1 of the New York Constitution;

(9) Retaliation pursuant to Article I, Section 1 of the New York Constitution;

(10)    Disparate treatment pursuant to the NYSHRL, Article 15;

(11)    Hostile work environment pursuant to NYSHRL, Article 15;

(12)    Retaliation pursuant to NYSHRL, Article 15;

(13)    Interference with prospective economic relationships;

(14)    Negligent infliction of emotional distress;

(15)    Aiding and abetting;

(16)    Conspiracy to violate civil rights in violation of § 1985.

## LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *In re Express Scripts Holding Co. Secs. Litig.*, No. 16 Civ. 3338 (ER), 2018 WL 2324065, at *6 (S.D.N.Y. May 22, 2018) (citing *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)). However, a court "is not required to credit mere conclusory statements or threadbare recitals of the elements of a cause of action." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alterations and internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 65-66 (2d Cir. 2018) (citing *Iqbal*, 556 U.S. at 678) (citation and internal quotation marks omitted).

## DISCUSSION

## I.   Plaintiff's Request that the Court Strike the State Defendants' Motion as Untimely

As a threshold matter, the Court addresses Plaintiff's request that the Court strike the State Defendants' motion to dismiss as untimely. ECF No. 39 at 13. Plaintiff argues that she had consented only to an extension of time for the State Defendants to file an *answer*, not a dispositive motion. ECF No. 39 at 12-13. Hence, the State Defendants' motion to dismiss should be deemed untimely and stricken. *Id.*

Notwithstanding this dispute, however, Plaintiff responded to the State Defendants' motion and submitted a memorandum fully analyzing the legal issues raised by the State Defendants. With the benefit of that full briefing and, in accordance "with the preferred practice in this Circuit," the Court will consider the State Defendants' motion on the merits and decline to strike the motion on

16

the minor, nonprejudicial procedural ground that Plaintiff raises.  *Casagrande v. Norm Bloom &*
*Son, LLC*, No. 3:11–CV–1918 (CSH), 2014 WL 5817562, at *4 (D. Conn. 2014) (citing *Pretty v.*
*Prudential Ins. Co. of Am.*, 696 F.Supp.2d. 170, 178 (D.Conn.2010) ("[T]he Court would prefer
to consider the issues presented by the Plaintiff's motion on the merits rather to deny it summarily
on procedural grounds.")).  Plaintiff's request is DENIED.

## II.   Eleventh Amendment Immunity

"The Eleventh Amendment bars a suit in federal court against a state or one of its agencies
in the absence of the state's explicit consent to be sued or Congress's unequivocal abrogation of
immunity."  *Popat v. Levy*, 328 F. Supp. 3d 106, 134 (W.D.N.Y. 2018 (citation omitted).  "For
Eleventh Amendment purposes, S.U.N.Y. is an integral part of the government of the State of New
York and when it or one of its constituent campuses is sued the State is the real party."  *Id.*

The State Defendants argue that Eleventh Amendment state sovereign immunity bars
Plaintiff's claims under § 1983, the New York State Constitution, the NYSHRL, and claims for
NIED and interference with prospective economic relationships against (1) Defendants SUNY and
Geneseo; and (2) the individual State Defendants—Levy, Howe, Battles, and Briggs—in their
official capacities.  ECF No. 30-1 at 5-6.

Plaintiff does not oppose dismissal of her § 1983 claims or state law claims against SUNY
and Geneseo, nor does she oppose the dismissal of her § 1983 claims or state law claims against
the individual State Defendants in their official capacities.  *See* ECF No. 39 at 16 ("We agree with
defendants to the limited extent that the Eleventh Amendment bars [Plaintiff's] section 1983 . . .
against the College and SUNY . . . . Further, the individual defendants herein are sued in both their
official and personal capacities.").  Accordingly, the State Defendants' motion to dismiss the
claims under § 1983, the New York State Constitution, the NYSHRL, and claims for NIED and

interference with prospective economic relationships against SUNY, Geneseo, and Defendants Levy, Howe, Battles, and Briggs in their official capacities is GRANTED and such claims are DISMISSED.

## III.  Section 1983 Claims

"An action under § 1983 has two elements: the defendant must (1) act under 'color of state law' to (2) deprive the plaintiff of a statutory or constitutional right." *Popat*, 328 F. Supp. 3d at 127 (citation omitted).  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *Id.*  As such, "[s]ection 1983 addresses only those injuries caused by state actors or those acting under color of state law."  *Id.* "If [an individual] defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant." *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019) (alteration in original) (citation omitted).

### A.  Board Defendants

The Board Defendants argue that Plaintiff's § 1983 brought against them should be dismissed because Plaintiff fails to allege that they acted under color of state law.  ECF No. 27-1 at 18-22.  In response to the Board Defendants' argument, Plaintiff asserts that her allegations are sufficient to satisfy the "close nexus test" or "joint action test."  ECF. No. 36 at 21-25.  The Court agrees.

"A private entity acts under color of state law for purposes of § 1983 when (1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public

function test'].*"  *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citation &
internal quotation marks omitted).  A plaintiff may establish "joint action" or "close nexus" based
upon several different theories and "[n]o one criterion must necessarily be applied."  *Popat*, 328
F. Supp. 3d at 128.

Indeed, "[t]he Second Circuit has noted the 'nebulous character of the state action test.'"
*Id.* (quoting *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 229-30 (2d Cir. 2004)).  At the motion
to dismiss stage, the Court's task is merely to assess whether "the [p]laintiff has set forth sufficient
factual allegations that raise a plausible inference that . . . [the] private entity[ ] acted 'under color
of state,'" not whether the plaintiff will ultimately prevail on such a theory.  *Id.* at 130-31.

### 1. The Foundation

Here, Plaintiff's allegations demonstrate that the Foundation "would be unrecognizable in
its present capacity without [Geneseo]."  *Id.* at 140.  Indeed, Plaintiff has alleged that the
Foundation had joint authority with Geneseo to hire and terminate Plaintiff, and shared other
employer responsibilities, including submitting input for performance evaluations.  ECF No. 23
¶¶ 2-3.  The Foundation functions as Geneseo's Board in such a manner that it was essentially the
equivalent of a college board of trustees.  *Id.* ¶ 4.  The Foundation's address includes "State
University of New York College at Geneseo" and it must act in accordance with Geneseo and
SUNY policies.  In addition, the Foundation is Geneseo's "fundraising arm" and its office is in the
same building as Geneseo's administration.  *Id.* ¶ 6.  At this juncture, these factual allegations raise
a plausible inference that the Foundation, though a private organization, was "so entwined" with
Geneseo that it was acting under color of state law.  *See Popat*, 328 F. Supp. 3d at 129.
Accordingly, the Board Defendants' motion to dismiss the claims against the Foundation is
DENIED.

### 2.  The Board Members

Turning to the individual Board members, the Board Defendants argue that "none of the [individual Board members] can be deemed a state actor under the close nexus test." ECF No. 27-1 at 21.

"Private parties are not proper defendants in a Section 1983 action unless the private parties were acting under color of state law." *Wolff v. State University of New York College at Cortland*, No. 1:13-CV-1397, 2016 WL 9022503, at *14 (N.D.N.Y. Feb. 5, 2016) (citation & internal quotation marks omitted).  "[I]n order to prove that a private actor was acting under the color of state law when he engaged in allegedly unconstitutional conduct, a plaintiff must point to evidence tending to show either (1) the existence of joint activity between the private actor and the state or its agents, or (2) a conspiracy between the state or its agents and the private actor." *Id.*  Under either theory, a plaintiff must allege "an agreement or plan and concerted action." *Id.*

Here, Plaintiff's allegations raise a plausible inference that the Board members and Geneseo and its administration acted jointly in exercising control over Plaintiff's hiring, compensation, work environment, performance evaluations, workload, and performance demands, and entered into an agreement under which employees, including Plaintiff, could be assigned to the Foundation.  *See, e.g.*, ECF No. 23 ¶¶ 2, 3, 6, 41, 76, 79, 84, 126.  Accordingly, the Board Defendants' motion to dismiss the § 1983 claims against the individual Board members is DENIED.

### B.  Howe, Levy, Battles, and Briggs in their Individual Capacities

The State Defendants move to dismiss Plaintiff's § 1983 claims brought against Howe, Levy, Battles, and Briggs in their individual capacities, arguing that the Amended Complaint fails to sufficiently allege that these Defendants "were personally involved in a constitutional

violation." ECF No. 30-1 at 8. Plaintiff opposes this dismissal, citing specific allegations against each Defendant. ECF No. 39.

The "basic elements" of disparate treatment and hostile work environment claims brought pursuant to § 1983 are: "(1) a plaintiff claiming disparate treatment . . . must plausibly allege that she suffered an adverse employment action taken *because of her sex*, and (2) a plaintiff claiming a hostile environment must plausibly allege *offensive conduct based on sex* that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Naumovski*, 934 F.3d at 212 (emphasis added) (footnotes & internal quotation marks omitted).

"To state a claim for retaliation pursuant to § 1983 . . . , a plaintiff must allege that '(1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice.'" *Marquez v. Hoffman*, No. 18-CV-7315, 2021 WL 1226981, at *18 (S.D.N.Y. March 31, 2021) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015)). "Adverse employment actions include terminations, demotions, or even the imposition of an 'excessive workload.'" *Naumovski*, 934 F.3d at 212 n.24.

Such § 1983 claims "can be brought against an[y] individual responsible for the discrimination." *Id.* at 212 (alteration in original) (citation & internal quotation marks omitted). "If [an individual] defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant." *Id.* (emphasis in original) (alteration in original) (citation omitted).

1.  **Howe and Levy**

Here, Plaintiff has failed to plausibly allege that Levy and Howe were personally involved in an adverse employment action taken against Plaintiff because of her sex, or that they engaged in offensive conduct based on sex.

Plaintiff alleges that Howe, "in a pre-meditated effort with . . . Levy, . . . angrily accosted [Plaintiff]" regarding the dismissal of Dean Rotondo from Geneseo.  ECF No. 23 ¶ 50.  "Howe acted aggressively, physically threatening [Plaintiff], and warning that harm would befall her and her career if she did not resign from her position as Vice President." *Id.*  Howe engaged in further harassing conduct against Plaintiff, including sending emails to students and faculty demanding her termination, coordinating students wearing T-shirts, and showing up uninvited at a Committee meeting to stare at Plaintiff "in a menacing manner. *Id.* ¶ 51-53.

In addition, Howe sent emails to Advancement and Communications Division employees "intimating violence if [Plaintiff] did not resign." *Id.*  He also gave a lecture regarding Dean Rotondo's departure during which he displayed "large photographs" of Plaintiff and Battles and the lecture was subsequently published to YouTube. *Id.*

During a proceeding related to a DHR claim filed by Howe, Levy "admitted that the accosting of [Plaintiff] and threats against her were pre-meditated.  He also testified that to his knowledge, previous Advancement Vice Presidents had not been treated in this matter." *Id* ¶ 57.

Even accepting the above, and the further accounts of Howe's harassment detailed in the Amended Complaint, as true, the allegations fail to raise a plausible inference that the conduct of Howe and Levy toward Plaintiff was motivated by her gender.

To be sure, Howe's conduct accepted as true was harassing and offensive and the Court recognizes that "[t]he harassing conduct need not be motivated by sexual desire to support an

inference of discrimination on the basis of sex," *Edwards v. Khalil*, No. 12 Civ. 8442, 2016 WL 1312149, at *14 (S.D.N.Y. March 31, 2016).  However, the only plausible inference from the Amended Complaint is that Levy and Howe acted out of displeasure with the dismissal of Dean Rotondo, and presumably Plaintiff's role in that dismissal.  There is nothing in the Amended Complaint that permits the Court to infer that Howe and Levy acted based on some gender animus toward Plaintiff.  Further, there are no allegations from which the Court can infer that these Defendants took an adverse employment action against Plaintiff (nor that they could have, since, as Professors at Geneseo, they lacked the authority to, *inter alia*,  terminate, demote, or impose additional work demands on Plaintiff).

Accordingly, the State Defendants' motion to dismiss the § 1983 claims is GRANTED as to Howe and Levy and such claims are DISMISSED.

### 2. Battles and Briggs

The allegations against Battles and Briggs fail for similar reasons.  While Plaintiff's Amended Complaint is replete with allegations in which Plaintiff reported her concerns regarding the conduct of the Board members and Howe to Battles and Briggs, it is devoid of any allegations from which the Court can infer that Briggs and Battles' actions—or perhaps more appropriately, failures to act—were on the basis of sex.

Similarly, the Amended Complaint fails to provide a specific instance in which Battles or Briggs took an adverse employment action against Plaintiff such as would support a retaliation claim.  In particular, the allegations that "Briggs's threatening, intimidating interrogation . . . was retaliation for [Plaintiff's] then recently filed [Division of Human Rights] Complaint against [Geneseo], which also named [Briggs and Battles]," does not sufficiently allege an adverse employment action because the Amended Complaint does not plausibly allege that Briggs had any

authority over Plaintiff, such as to terminate, demote, or impose additional work demands on her. Nor does she alleged that Briggs's interview "had the effect, by itself, of altering the terms and conditions of her employment." *Whipple v. Reed Eye Assocs.*, 524 F. Supp. 3d 76, 89 (W.D.N.Y. Mar. 8, 2021).

Accordingly, the State Defendants' motion to dismiss the § 1983 claims against Battles and Briggs is GRANTED and such claims are DISMISSED.

## IV.   Title VII Claims

### A.  Individuals

"[I]ndividuals are not subject to Title VII liability." *Mills-Sanchez v. Research Foundation for SUNY*, No. 1:18-cv-723 (GLS/DJS), 2019 WL 2549726, at *5 (N.D.N.Y. June 20, 2019). Defendants argue that these claims therefore must be dismissed against Defendants Levy, Howe, Battles, Briggs, Camiolo, Gavagan, Gleason, Loughran, and Walley, and the John Doe/Jane Doe. ECF No. 30-1 at 12; ECF No. 27-1 at 22.

Indeed, Plaintiff concedes that her Title VII claims cannot lie against these individuals. ECF No. 36 at 26; ECF No. 39 at 20.  Accordingly, the claims under Title VII against Levy, Howe, Battles, Briggs, Camiolo, Gavagan, Gleason, Loughran, Walley, and the John Doe/Jane Doe are DISMISSED.

### B.  SUNY and Geneseo

Because Plaintiff's discrimination claims brought against SUNY and Geneseo pursuant to § 1983, the New York State Constitution, and the NYSHRL were dismissed above based upon sovereign immunity, Title VII is the only remaining avenue under which Plaintiff could potentially hold SUNY and Geneseo liable for disparate treatment, retaliation, or hostile work environment.

The State Defendants move to dismiss Plaintiff's discrimination claims against Geneseo, arguing that they are "vague and conclusory."  ECF No. 30-1 at 8.  This section of the State Defendants' brief cites no case law and raises no argument specific to Title VII.  *See id.*  Indeed, in response, Plaintiff notes "[t]he absence of any mention in this section of Title VII."  ECF No. 39 at 17.  The State Defendants' argument in support of its motion to dismiss the Title VII discrimination claims against Geneseo are not meaningfully developed in a way that permits this Court to conduct review.  See *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Accordingly, the State Defendants' motion is DENIED and Plaintiff may proceed on her under Title VII discrimination claims against Geneseo.  Those same claims will also go forward against SUNY because the State Defendants' motion does not specifically seek to dismiss the Title VII discrimination claims against SUNY.  *See generally* ECF No. 30-1.

### C.  The Foundation

The Board Defendants argue that Plaintiff's Title VII claims against the Foundation must be dismissed because the Amended Complaint does not adequately allege "that the Foundation is subject to Title VII liability."  ECF No. 27-1 at 22.  In response, Plaintiff argues that the Amended Complaint "clearly alleges that the Foundation (jointly with [Geneseo]) employs [Plaintiff], and that the Foundation has at least fifteen employees."  ECF No. 36 at 26.

"[T]he existence of an employer-employee relationship is a primary element of [a] Title VII claim[ ]."  *Brown v. Daikin America Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (alterations in original).  "An entity that is not formally the plaintiff's direct employer may also be liable under Title VII."  *Popat*, 328 F. Supp. 3d at 117.   "That is, courts construe the term 'employer'

functionally, to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment." *Id.*

Here, Plaintiff has alleged that she was employed by Geneseo as Advancement VP and was "simultaneously employed by [the Foundation] as its Executive Director." ECF No. 23 ¶ 1. She has further alleged that Geneseo and the Foundation entered into an agreement or agreements under which Geneseo "contributed personnel—including [Plaintiff]—to the Foundation," who then worked for the Foundation, *Id.* ¶ 2, and that the two entities "shar[ed] . . . employer responsibilities," including providing input for performance evaluations and retaining the authority to hire and terminate. *Id.* Plaintiff alleges that Geneseo assigned "*more than twenty (20)*" of its employees to the Foundation and that Foundation Board members had input into her compensation, workload, and evaluations. *Id.* ¶ 6.

Under the "joint employer" test, "[r]elevant factors include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Popat*, 328 F. Supp. 3d at 119 (citation omitted). Plaintiff has plausibly alleged several of these factors and, as such, "whether [the Foundation] should be considered a joint employer for purposes of Title VII cannot be determined at the pleading stage." *Id.* at 121.

Accordingly, the Board Defendants' motion to dismiss the Title VII claim against the Foundation is DENIED.

V.    **NYSHRL and Aiding and Abetting Claims**

NYSHRL claims are generally analyzed under the same framework as Title VII claims. *See Whipple v. Reed Eye Assocs.*, 524 F. Supp. 3d 76, 86 (W.D.N.Y. 2021). For that reason, the Court makes the following rulings with respect to the NYSHRL claims: (1) Plaintiff's NYSHRL

claims against SUNY and Geneseo are DISMISSED based on Eleventh Amendment immunity, *see Wiley v. Plattsburgh*, 407 F. Supp. 2d 119, 126 (N.D.N.Y. 2019); and (2) the Board Defendants' motion to dismiss Plaintiff's NYSHRL claims against the Foundation on the basis that the NYSHRL does not apply to the Foundation is DENIED pursuant to the analysis in section IV, The Court considers below the Defendants' additional arguments regarding Plaintiff's NYSHRL claims.

### A.  Howe, Levy, Battles, and Briggs

The NYSHRL prohibits "'aid[ing], abet[ting], incit[ing], [and] compel[ling] or coerc[ing] the doing' of any unlawful acts of discrimination . . . including sexual harassment and retaliation." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (some alterations in original) (quoting N.Y. Exec. Law § 296(6)).  Indeed, "[A]n individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim." *Popat v. Levy*, 253 F. Supp. 3d 527, 540 (W.D.N.Y. 2017) (citation & internal quotation marks omitted).  "[A] co-worker who actually participates in the conduct giving rise to a discrimination claim [can] be held liable under the NYSHRL [ ] even though that co-worker lacked the authority to either hire or fire the plaintiff." *Id.*  "A supervisor's failure to take adequate remedial measures in response to a complaint of discrimination can, with proper factual allegations, constitute actual participation." *Id.* (citation & internal quotation marks omitted).

Here, for the reasons discussed above in section III.B, Plaintiff has failed to adequately allege that Howe, Levy, and Briggs discriminated against, or undertook any course of conduct toward, Plaintiff on the basis of her sex.  Thus, Plaintiff's NYSHRL claims are DISMISSED as to Howe, Levy, and Briggs.

As to Battles, based on the same factual allegations discussed in section III.B, Plaintiff's allegations are sufficient to support the plausible inference that she, in her role as Plaintiff's supervisor, failed to remediate the discrimination at the hands of the Board members despite Plaintiff's numerous complaints.  *See McHenry*, 510 F. Supp. 3d at 68.  Accordingly, the State Defendants' motion to dismiss the NYSHRL claims against Battles are DENIED.

## B.  The Board Members

The Board Defendants argue that Plaintiff has failed to adequately allege a claim under the NYSHRL against the Foundation and individual Board members for (1) hostile work environment; (2) sex discrimination; or (3) retaliation.  ECF No. 27-1 at 29-38.

### 1.  Hostile Work Environment

The Board Defendants argue that the Plaintiff fails to allege conduct that is severe or pervasive enough to support a hostile work environment claim.  ECF No. 27-1 at 33-38.

"To state a claim for a hostile work environment . . . a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex."  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007) (citation & internal quotation marks omitted).

Here, Plaintiff alleges that the Foundation's Board members "routinely referred to their Board as the 'Boys' Club,'" ECF No. 23 ¶¶ 5, 66, and that the Foundation was a "strongly gendered environment."  *Id.* ¶¶ 43, 126.  Specifically, Plaintiff asserts that she was warned by another Geneseo employee "that Board members 'can be handsy,'" *Id* ¶ 44, and she asserts that, in accordance with that warning, she experienced that the Board members "regularly hugged and

kissed her on the cheek, though she neither initiated nor approved of such intimate physical contact." *Id.* ¶ 45.  For instance, at several Geneseo events held in October 2018, Plaintiff "was kissed and hugged . . .by several male Board members, including . . . Walley, Gavagan, . . .Camiolo, . . . and Gleason."  ECF No. 23 ¶ 96.  In addition to physical contact, "Board members told [Plaintiff] to be 'less confident,' 'softer'"—comments which, in context, could support a finding of discriminatory intent. *Id.* ¶ 45; *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 44 (2d Cir. 2000) (statements by superior, that female employee should "walk more femininely, talk more femininely, [and] dress more femininely," were "a clear indication that [the employee's] superior[] had discriminated against her on the basis of sex").

With respect to Camiolo specifically, Plaintiff alleges that, in June 2018 at a Geneseo event, he "intentional[ly] "kissed [Plaintiff] on the mouth . . . before a crowd that included [his] fraternity brothers." *Id.* ¶ 65.  Furthermore, Plaintiff alleges that, "[o]n March 21, 2019, two female employees in [her] Division complained to her that [Camiolo] had harassed and intimidated them, causing emotional distress." *Id.* ¶ 113.  She also alleges that she was informed by another individual of "a sexual incident between a former employee and [Camiolo] at the June, 2016 Alumni Reunion." *Id.* ¶ 44.

Plaintiff also makes specific allegations regarding Gavagan.  She asserts that he sought to "intimidate" her into hiring "a young white male friend" even though doing so would have been against Geneseo policies and procedures.  She further asserts that, when she refused, Gavagan sent angry emails and berated her on the phone. *Id* ¶ 95.

Turning to Loughran, Plaintiff alleges that he "infantilized her by calling her a 'petty junior high girl' because she had not allowed the Men's Ice Hockey coach, a white male, to break procedures, policies, protocols, and best practices." *Id.* ¶ 91.

Plaintiff makes specific allegations regarding Walley and Gleason.  The first set of those allegations relate to a discussion during a "Committee on the Board" meeting.  While Board members were discussing the composition of the Foundation and prospective members, Gleason stated, "Do we really want diversity?"  *Id.* ¶ 82.  In reply, Walley stated, "We can have diversity or money: not both."  *Id.*  Plaintiff told Gleason and Walley that these "highly discriminatory, demeaning, and distressing comments" were "inappropriate and false."  *Id.*

In the spring of 2018, Plaintiff understood comments made by Gleason that she had "better perform or else" to "indicate[ ] that he wanted her to act stereotypically feminine," since she was "already performing the duties of her position" and was being instructed by Walley to "show more emotion," "be less serious," and "let us solve your problems."  ECF No. 23 ¶ 68.

"Whether the environment may be considered sufficiently hostile to support a hostile work environment claim is to be measured by the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance."  *Patterson v. Xerox Corp.*, 732 F. Supp. 2d 181, 191 (W.D.N.Y. 2010).

The Court considers these factors in analyzing whether Plaintiff has plausibly alleged a hostile work environment.  Plaintiff's allegations detailed above occurred over the course of a time period of only 2 years and 8 months.  Plaintiff was hired by Geneseo and the Foundation in July 2016 and she was terminated in March 2019. *Id.* ¶¶ 34, 114.  "[T]he Second Circuit has held that there is no 'magic' threshold number of harassing incidents that are required, as a matter of law." *Humphrey v. Cnty. of Nassau*, No. 06–CV–3682, 2009 WL 875534, at *9 (E.D.N.Y. March 30, 2009).  However, the fact that all of the alleged incidents occurred in a span of 32 months tends to suggest the conduct was pervasive.  *Cf. Mills-Sanchez*, 2019 WL 2549726, at *10 (finding that

remarks occurring "intermittently" over a span of six years supported a finding that conduct was not pervasive enough).

The Board Defendants cite *Harrington v. County of Fulton* in support of the argument that Plaintiff's hostile work environment claim should be dismissed. 153 F. Supp. 164, 170 (N.D.N.Y. 2001). In *Harrington*, the court found that plaintiff's factual assertions that her supervisor called her a "bitch" on more than one occasion, taunted her, and stared at her were insufficient to support a claim. However, the *Harrington* court's ruling was premised, in part, on the fact that "the conduct alleged was merely offensive and did not appear to affect plaintiff's job performance." *Harrington*, 153 F. Supp. at 170. Here, in contrast, Plaintiff alleges that her ability to perform at work suffered due to the Board members' conduct. Specifically, she alleges that she was "overwhelm[ed]," that her "doctors were concerned about her physical well-being and risk for heart attack and/or stroke, due to her abnormally high blood pressure and stress," and that she experienced stress, anxiety, and medical issues as a result of her work environment. ECF No. 23 ¶¶ 78, 84, 102. She also alleges that Loughran, in particular, "prevented [Plaintiff] from performing her job by refusing to meet with her, and by ignoring requests regarding official [Foundation] business." *Id.* ¶ 94.

Accordingly, Plaintiff has plausibly alleged that "the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment." *Humphrey*, 2009 WL 875534, at *8.

Plaintiff's allegations are not limited to an isolated incident but, rather, are "sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). While any one of the incidents alleged is not particularly severe in this case, when the patchwork is stitched together, it reveals a culture and a broader framework that is sufficient

to allege a hostile work environment "on the basis of the cumulative effect of the abusive conduct." *Hoit v. Capital District Transp. Auth.*, 1:15-CV-134, 2018 WL 2324050, at \*9 (N.D.N.Y. May 22, 2018). Thus, viewed in their totality, and accepting the facts alleged in the complaint as true and drawing all reasonable inferences from those facts in Plaintiff's favor, Plaintiff's allegations are sufficient to support a claim at this juncture. *See Nat'l Fed. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 567 (D. Vt. 2015).

Accordingly, the Board Defendants' motion is DENIED and Plaintiff may pursue her NYSHRL claims against the Board Defendants for hostile work environment.

## 2. Disparate Treatment Claims

The Board Defendants argue that Plaintiff's disparate treatment claims fail because she does not allege that the Board members "took, or participated in, any adverse action against her."[5] ECF No. 27-1 at 29. In response, Plaintiff argues that she was "subjected to (effective) demotions and retaliatory dismissals." ECF No. 36 at 34.

To state a disparate treatment claim, a plaintiff "must plausibly allege that she has suffered an 'adverse employment action' taken 'because of' her sex.'" *Naumovski*, 934 F.3d at 212 (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)). "Adverse employment actions include terminations, demotions, or even the imposition of an 'excessive workload.'" *Id.* at 212, n.24 (citing *Vega*, 801 F.3d at 85, 88).

---

[5] The Board Defendants argue that dismissal of the claims against the Foundation is required because "Plaintiff offers no allegations of any employment actions taken by the Foundation whatsoever, let alone adverse employment actions." ECF No. 27-1 at 30. But they ignore the question of, and fail to develop an argument regarding, whether the individual Board Defendants' conduct may be imputed to the Foundation. *See Hoit*, 2018 WL 2324050, at \*9 (analyzing whether there was a basis to impute an employees' alleged sexual harassment onto the employer such that the employee could be held liable under the NYSHRL for a hostile work environment claim). The Court declines to consider this issue *sua sponte*. *See Zannino*, 895 F.2d at 17.

#### i.      Termination

Plaintiff alleges that, in January 2018, the Foundation Board members "met in executive session for almost a full day, discussing whether to fire [Plaintiff]."  ECF No. 23 ¶ 62.  However, Plaintiff does not allege that she was in fact terminated at that time.  Rather, she was terminated in March 2019 and the decision to terminate "was made by the president of another SUNY university—a friend of President Battles."  *Id.* ¶ 114.

Without question, termination constitutes an adverse employment action.  *Naumovski*, 934 F.3d at 212.  However, based on these facts, the Court cannot plausibly infer that the individual Board members or the Foundation were in fact involved in Plaintiff's termination.  There is nothing in the allegations that permits the Court to draw a connection between the Foundation Board members discussing whether to fire Plaintiff in January 2018, and Plaintiff's actual termination over a year later in March 2019.  Accordingly, Plaintiff's disparate treatment claim under the NYSHRL based on her termination is DISMISSED as to the Board Defendants.[6]

#### ii.      Effective Demotion

"[D]emotions, or even the imposition of an 'excessive workload'" may constitute an adverse employment action.  *Naumovski*, 934 F.3d at 212.  Here, Plaintiff alleges that, while she was out on FMLA leave, "the Board removed [Plaintiff] from its communication platform, and destroyed her Foundation-issued credit card . . . thereby effectively demoting her as the Foundation's Executive Director."  ECF No. 23 ¶ 108.  In addition, she alleges that she was "prevented . . . from doing her job" because the Board Chair "requested information from [her]

---

[6] Under this same analysis, any § 1983 disparate treatment claims against the Board Defendants regarding Plaintiff's termination, and any Title VII disparate treatment claims against the Foundation regarding Plaintiff's termination are DISMISSED, as they require the same "adverse employment action." *See Naumovski*, 934 F.3d at 212.

regarding issues that suggested she would be terminated" and "stopped meeting with her for regularly scheduled calls." *Id.* This she alleges "was, in effect, another demotion." *Id.*

Plaintiff additionally alleges that she was "effectively demoted" in January 2019 when "the defendants stopped providing [her] with agendas or minutes from Cabinet meetings, though she remained a member of the Cabinet." *Id.* ¶106. Finally, she alleges that she was given "overwhelming demands" that were "impossible" and were an attempt to "force her to quit." *Id.* ¶ 84.

These facts plausibly allege that Plaintiff suffered "the deprivation of some tangible job benefit such as compensation, terms, conditions or privileges of employment." *Edwards v. Huntington Union Free Sch. Dist.*, 957 F.Supp.2d 203, 210 (E.D.N.Y. 2013) (noting that a demotion may be evidenced by "significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") Accordingly, the Board Defendants' motion to dismiss Plaintiff's disparate treatment claim related to her effective demotion and excessive workload is DENIED.

### 3. Retaliation

Finally, the Board Defendants argue that Plaintiff fails to adequately allege a retaliation claim against the Foundation or that the individual Board members participated in any retaliation against her. Specifically, they argue that "Plaintiff . . . fails to allege that the Foundation took . . ., or the [individual Board Defendants] participated in, any adverse employment action against [Plaintiff], as required to state a retaliation claim." ECF No. 27-1 at 32. They seek dismissal of Plaintiff's retaliation claims arising from her effective demotion and the Board Defendants' alleged request to participate in performance evaluations.

The Court has already determined above that the effective demotions constituted adverse employment actions.  Thus, the Board Defendants' motion to dismiss Plaintiff's retaliation claim on this basis DENIED.

Turning to the performance evaluations,  Plaintiff alleges that in August 2018, the Board members requested to "be allowed to participate *personally* in [Plaintiff's] performance evaluation."  *Id* ¶ 76 (emphasis in original)  Plaintiff alleges that this "unusual request was retaliation for [her] complaints of unlawful discrimination and other protected activity," noting that she had met all her performance goals as evidence that their request was retaliatory. *Id.*  These allegations are insufficient to underpin a retaliation claim.

First, Plaintiff does not allege that the Board members *actually* participated in the evaluations—only that they requested to do so.  In addition, assuming they did participate, Plaintiff does not allege that they provided negative reviews.  Accordingly, Plaintiff's retaliation claim under the NYSHRL based on the Board members' performance evaluations is DISMISSED as to the Board Defendants.[7]

## VI.   New York State Constitutional Claims

The State Defendants and the Board Defendants move to dismiss Plaintiff's claims brought pursuant to the New York State Constitution.

"Where claims are brought pursuant to the New York State Constitution that mirror claims brought under Section 1983, courts in this Circuit have held that there is no private right of action on the state constitutional claims."  *Wright v. City of Syracuse*, No. 5:10–CV–0661, 2014 WL 1293527, at *18 (N.D.N.Y. March 31, 2014) (collecting cases).  Here, Plaintiff's claims brought

---

[7] Under this same analysis, any § 1983 retaliation claims against the Board Defendants regarding Plaintiff's performance evaluations, and any Title VII retaliation claims against the Foundation regarding Plaintiff's performance evaluations are DISMISSED as they require the same "adverse employment action." *See Naumovski*, 934 F.3d at 212.

pursuant the New York State Constitution mirror her § 1983 claims.  "[F]or this reason alone," the State Defendants' and Board Defendants' respective motions to dismiss these claims are GRANTED and these claims are DISMISSED.  *See id.* at *19.  The Court considers next these claims against the individual State Defendants and individual Board Defendants.

## VII.   § 1985 Conspiracy Claims

Plaintiff brings a claim for conspiracy to violate her civil rights pursuant to 42 U.S.C. § 1985.  ECF No. 23 at 38-39.  "A conspiracy claim under Section 1985(3) requires a plaintiff to allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (internal quotation marks omitted).

### A.  State Defendants

The State Defendants move to dismiss Plaintiff's claims brought pursuant to § 1985(3).  ECF No. 30-1 at 15-16.  Because, under the analysis above, Plaintiff has no viable § 1983 claims against any of the State Defendants, her § 1985 claims against them must necessarily be dismissed.  *See O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 426 (S.D.N.Y. 2004) ("In the absence of any claim establishing a violation of civil rights, the court must also dismiss claims of conspiracy brought under § 1985.").  Accordingly, the State Defendants' motion is GRANTED and Plaintiff's § 1985 claim is DISMISSED as to the State Defendants.

### B.  Board Defendants

The Board Defendants move to dismiss Plaintiff's § 1985 claim, arguing that Plaintiff has failed to allege "any meeting of the minds sufficient to plead a 'conspiracy,' or any act specifically undertaken by any of the Board Defendants."  ECF No. 27-1 at 42.

In response, Plaintiff points to, *inter alia*, the following allegations: (1) the Foundation Board met in executive session for almost a full day in January 2018 to discuss whether to fire Plaintiff; and (2) during the Foundation Board's October 2018 "Committee on the Board" meeting, Walley and Gleason "criticized the goal of diversity in connection with Board member nominations, after which [ ] Gleason and the Board defendants retaliated against and intimidated [Plaintiff], by criticizing her and suggesting that she should be replaced, though she had achieved all established goals, and further conspired to force [Plaintiff] to quit."  ECF No. 36 at 38 (citing ECF No. 23 at ¶¶ 62, 82-85).  At this juncture, all that is required is that the Plaintiff "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).  Plaintiff's allegations are sufficient to support a plausible § 1985 claim.

## VIII.   Interference with Prospective Economic Relations

The State Defendants and the Board Defendants move to dismiss Plaintiff's state law claim for interference with prospective economic relations.  ECF No. 27-1 at 38-40; ECF No. 30-1 at 13-14.  Plaintiff states that she "withdraws her Thirteenth Cause of Action."  ECF No. 39 at 22. Accordingly, this claim is DISMISSED as to all Defendants.

IX.   **Negligent Infliction of Emotional Distress**

A.  **State Defendants**

Pursuant to section I *infra*, Plaintiff's claims for negligent infliction of emotional distress ("NIED") against SUNY and Geneseo, and against Howe, Battles, Briggs, and Levy in their official capacities are barred by the Eleventh Amendment and were dismissed above.  The Court turns to Plaintiff's NIED claim against the Board Defendants and against Howe, Levy, Briggs, and Battles in their individual capacities.

"Under New York law, a plaintiff alleging NIED must show '(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress.'" *Truman v. Brown*, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020) (quoting *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015)).  "Under the case law, there are limited recognized contexts in which a claim of NIED may be viable."  *Id.*  "A plaintiff must plead, in addition to the elements above, facts making out one of three 'theories': (1) a bystander theory, (2) a direct duty theory, or (3) a special circumstances theory."  *Id.* (citing *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000)).

The direct duty theory requires that the plaintiff allege "she suffer[ed] an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety."  *Id.* (quoting *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996)).  The duty alleged "must be specific to the plaintiff, and not some amorphous, free-floating duty to society."  *Id.*  In addition, the direct duty theory requires "an objective inquiry turning on whether a plaintiff's physical safety was actually endangered, not a subjective evaluation dependent on the plaintiff's state of mind."  *Id.* (quoting *Carney v. Bos. Mkt.*, No. 18 Civ. 713 (LGS), 2018 WL 6698444, at *3 (S.D.N.Y. Dec. 20, 2018)).

The Board Defendants move to dismiss this claim arguing, *inter alia*, that Plaintiff fails to allege what duty was owed by the Board Defendants to Plaintiff.  ECF No. 27-1 at 40-41.  In response, Plaintiff cites *Ismail v. Barad*, No. 91 CIV. 4305 (SWK), 1992 WL 188343, at *3 (S.D.N.Y. 1992), for the proposition that a general duty owed to the public is sufficient.  However, the question before the *Ismail* Court was whether interpretation of a collective bargaining agreement was required to resolve the plaintiff's claims and, whether such claims were therefore preempted by the Labor Management Relations Act.  *Ismail*, 1992 WL 188343, at *1-2.  Accordingly, the statement of law cited by Plaintiff was made in the context of the question whether the duty owed arose under the collective bargaining agreement or at common law.  *Id.* at *2.

Plaintiff's Amended Complaint "does not allege that [the Board Defendants] had a specific duty to [Plaintiff]." *Truman*, 434 F. Supp. 3d at 123.  She merely alleges "some amorphous, free-floating duty to society," which is not sufficient to state an NIED claim.  *Id.*  Accordingly, Plaintiff's NIED claim against the Board Defendants is DISMISED. [8]

Although the State Defendants did not move to dismiss Plaintiff's NIED claims against the individual State Defendants on the merits, the reasons justifying dismissal of the claims against the Board Defendants apply equally to them.  "The Court 'has the power to dismiss a complaint sua sponte for failure to state a claim on which relief can be granted,' so long as it gives 'the plaintiff an opportunity to be heard.'" *Emilee Carpenter, LLC v. James*, No. 21-CV-6303, 2021 WL 5879090, at *22 (W.D.N.Y. Dec. 13, 2021) (citing *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991)).

---

[8] Plaintiff has not argued the existence of, nor are there allegations to support, an NIED claim based upon the "bystander theory," or "the special circumstances theory." *Truman*, 434 F. Supp. 3d at 122-23.

Here, "Plaintiff has had an opportunity to be heard on the legal viability of her claims in conjunction with the [the Board Defendants'] motion to dismiss." *Id.* (citing *Ali v. Ramos*, No. 16-CV-1994, 2018 WL 1353210, at *1 n.1 (S.D.N.Y. Mar. 14, 2018)).  Accordingly, the Court *sua sponte* dismisses the NIED claims against Howe, Levy, Battles, and Briggs for the reasons discussed above.

## CONCLUSION

For the reasons stated, the State Defendants' motion to dismiss for failure to state a claim, ECF No. 30, is GRANTED IN PART and DENIED IN PART; and the Board Defendants' motion to dismiss for failure to state a claim, ECF No. 27, is GRANTED IN PART and DENIED IN PART.

Plaintiff's § 1983 claims (Counts 1, 2, and 3) are DISMISSED as to the State Defendants, but may go forward as to the Board Defendants except for any disparate treatment claims regarding Plaintiff's termination and any retaliation claims regarding Plaintiff's performance evaluations which are DISMISSED.

Plaintiff's Title VII claims (Counts 4, 5, and 6) are DISMISSED as to Battles, Briggs, Howe, Levy, Camiolo, Gleason, Gavagan, Loughran, and Walley, but may go forward as to SUNY, Geneseo.  Such claims may go forward as to the Foundation, except for any disparate treatment claims regarding Plaintiff's termination and any retaliation claims regarding Plaintiff's performance evaluations which are DISMISSED.

Plaintiff's New York State Constitutional claims (Counts 7, 8, and 9) are DISMISSED as to all Defendants.

Plaintiff's NYSHRL claims and aiding and abetting claims (Counts 10, 11, 12, and 15) are DISMISSED as to SUNY, Geneseo, Briggs, Howe, and Levy.  Plaintiff's NYSHRL claims may

go forward as to Battles.  Plaintiff's NYSHRL claims against the Foundation, Camiolo, Gleason, Gavagan, Loughran, and Walley may go forward except for any disparate treatment claims regarding Plaintiff's termination and any retaliation claims regarding Plaintiff's performance evaluations which are DISMISSED.

Plaintiff's interference with prospective economic relationships claim (Count 13) is DISMISSED as to all Defendants.

Plaintiff's NIED claim (Count 14) is DISMISSED as to all Defendants.

Plaintiff has no surviving claims against Defendants Briggs, Howe, and Levy.  The Clerk of Court is directed to update the case caption and terminate those Defendants from this suit.


IT IS SO ORDERED.

Dated:  March 30, 2022
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York