UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHY JOHNSON BOWLES,

Plaintiff,

v.

Case # 21-CV-6048-FPG

DECISION AND ORDER

THE STATE UNIVERSITY OF NEW YORK AT GENESEO, *et al.*,

Defendants.

## INTRODUCTION

Plaintiff Kathy Johnson Bowles brings this employment discrimination action against Defendants the State University of New York ("SUNY"), the State University of New York at Geneseo ("Geneseo"), and Denise Battles (collectively the "State Defendants"); Plaintiff also brings this action against Defendants the Geneseo Foundation, Inc. ("Foundation") and five members of the Foundation's Board ("Board"): John Camiolo, Kevin Gavagan, John Gleason, Daniel Loughran, and Robert Walley (collectively with the Foundation, the "Board Defendants"). *See* ECF No. 23.[1] The State Defendants and the Board Defendants respectively move for summary judgment on Plaintiff's claims. ECF Nos. 93, 94. Plaintiff opposes both motions. ECF No. 104. For the reasons that follow, the State Defendants' and the Board Defendants' motions for summary judgment are GRANTED to the extent discussed below.

[1] Plaintiff's Amended Complaint makes claims against all Defendants, including "Defendants John Doe(s) and Jane Doe(s) [who] are persons not yet known to [Plaintiff], [and] whose names will be added once their identities are ascertained." ECF No. 23 ¶ 27. Even though discovery has since closed, Plaintiff has still not identified the Doe Defendants. "Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice." *Delrosario v. City of New York*, No. 07 CIV. 2027, 2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010). Accordingly, the Court dismisses Plaintiff's claims against the Doe Defendants without prejudice.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "It is the movant's burden to show that no genuine factual dispute exists, and all reasonable inferences must be drawn in the non-movant's favor." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citations omitted). "Once a movant has made that showing, the nonmovant must set forth specific facts showing that there is a genuine issue for trial." *Bustamente v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (quotation marks and citation omitted). In doing so, the non-moving party may not rely on "[c]onclusory allegations, conjecture, and speculation." *Id.* (citation omitted). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted). If the Court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## BACKGROUND

The following facts are undisputed or taken from the record except where noted.[2] Geneseo is one of SUNY's designated colleges. ECF No. 93-1 ¶ 2. The Foundation serves as a means of

[2] The State Defendants' Rule 56 Statement of Undisputed Facts ("Rule 56 Statement") contains 131 paragraphs. ECF No. 93-1. Yet, Plaintiff's responding Rule 56 Statement contains 152 paragraphs. ECF No. 105. The Court cannot ascertain which of the facts contained in Plaintiff's Rule 56 Statement actually correspond to the facts in the State Defendants' Statement. *See* Loc. R. Civ. P. 56(a)(2) (unless it is "specifically controverted" by a non-moving party's opposing statement of facts that is consisted of "correspondingly numbered paragraphs," "[e]ach numbered paragraph in the moving party's statement of material facts may be deemed admitted"); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to

receiving and managing gifts and making related revenues available to Geneseo, as well as a vehicle for managing real property for Geneseo's benefit. *Id.* ¶ 4. The Foundation is an independent and separate legal entity from Geneseo. *Id.*; ECF No. 94-1 ¶ 3; ECF No. 106 ¶ 3. Geneseo and the Foundation operate under the College/Foundation Agreement ("CFA") under which Geneseo provides personnel to support the Foundation's work, including the Vice President for College Advancement ("College Advancement VP"), who, by virtue of the position, also serves as the Executive Director of the Foundation. ECF No. 23-1; ECF No. 93-1 ¶ 8.

In May 2016, Geneseo's President Denise Battles extended an offer to Plaintiff for the permanent College Advancement VP position with conditions of an initial salary of $170,000 and a reimbursement up to $12,000 for moving expenses; Plaintiff accepted. ECF No. 93-1 ¶¶ 11, 15, 20–21. Plaintiff's hiring decision was made by Geneseo and Battles alone. ECF No. 94-1 ¶¶ 13, 16; ECF No. 106 ¶¶ 13, 16. The Board did not set or modify any duties or requirements of Plaintiff in her role as the College Advancement VP or the Foundation's Executive Director. ECF No. 94-1 ¶ 18; ECF No. 106 ¶ 18. Neither the Foundation nor the Board members provided or approved any of Plaintiff's compensation or employment benefits and did not maintain Plaintiff's personnel file. ECF No. 94-1 ¶¶ 35–38; ECF No. 106 ¶¶ 35–38.

On July 14, 2016, Plaintiff began working as Geneseo's College Advancement VP and the Executive Director of the Foundation. ECF No. 93-1 ¶ 9. At the time, Battles was President and Julie Briggs was Assistant Vice President for Human Resources at Geneseo; John Camiolo, John Gleason, Daniel Loughran, and Robert Walley were the Foundation's Board members and Kevin Gavagan was Chairman of the Board. *Id.* ¶ 10. In September 2016, Jon Hysell, the former interim College Advancement VP and Plaintiff's predecessor, told Plaintiff that his salary was $173,000

---

comply with local court rules."). Nevertheless, the Court reviewed the parties' Rule 56 Statements and the evidence to identify the undisputed facts of this case to the extent possible.

and the Board paid him a $15,000 stipend "only . . . because his friend the previous VP Bill Brower told him what to ask for and who to ask." ECF No. 93-1 ¶ 25.

In November 2016, Plaintiff discussed her feelings "that [she] was being treated differently by the board" to Board member Jennifer Dunlap, who replied, "Welcome to the boys' club. You're a woman. They expect you to do more for less." *Id.* ¶ 27; ECF No. 93-3 at 52. Plaintiff discussed Dunlap's comments with Battles, who responded, "You thought you left the south," according to Plaintiff. ECF No. 93-1 ¶ 28. However, Plaintiff later conceded that others had only heard Dunlap use the term "boys' club" to describe the Board's past and to advocate for continued diversity initiatives; in fact, the Board supported and applauded diversification efforts and commended Dunlap's efforts to change the historical composition of a "boys' club." ECF No. 94-1 ¶¶ 41–42; ECF No. 106 ¶¶ 41–42.

Battles was Plaintiff's supervisor and evaluated her. ECF No. 94-1 ¶ 21; ECF No. 106 ¶ 21. In July 2017, Battles prepared a narrative to accompany Plaintiff's performance evaluation for the 2016–2017 year, which commended Plaintiff's performance as College Advancement VP. ECF No. 93-3 at 460–62. In October 2017, this narrative was incorporated into Plaintiff's performance evaluation, which gave overall high ratings. *Id.* at 464–78. When Gleason asked whether he could provide input on Plaintiff's performance evaluation as the Board's Chair, Battles rejected. ECF No. 94-1 ¶ 20; ECF No. 106 ¶ 20.

In April 2018, Plaintiff told Briggs that Walley told her to "be softer, less confident, let [the Board] solve [her] problems and basically act more feminine," and that Gleason told her to "perform or else," and about "disparate treatment . . . pay disparities . . . [and] its impact on [Plaintiff's] health and well-being." ECF No. 93-1 ¶ 35. Plaintiff also told Geneseo's Chief

Diversity Officer, robbie routenberg,[3] about pay disparity, performance disparity, Gleason's and Walley's comments to her, and "the hugging and the kissing on the cheek" that Board members did when "they greeted [her]." *Id.* ¶¶ 10, 35. It is undisputed that Board members often greeted one another and Plaintiff with hugs and/or a kiss on the cheek. ECF No. 94-1 ¶ 45; ECF No. 106 ¶ 45. In May 2018, Plaintiff told Gleason that she was being asked to do more work than her predecessors. ECF No. 93-1 ¶ 37.

In June 2018, Camiolo came to Geneseo to attend alumni weekend, and Plaintiff joined. *Id.* ¶ 39. The details of Plaintiff and Camiolo's interaction are disputed. Plaintiff claims that Camiolo approached her, grabbed her, and kissed her twice. *Id.* ¶¶ 40–41. Plaintiff claims that afterwards, she cried in the bathroom and later told her subordinate, Justin Johnston, that it was "awkward and awful." *Id.* ¶ 42. On the other hand, Camiolo claims that Plaintiff was the one who kissed him, which was "alarming" and "very awkward." *Id.* ¶ 40. He also denies kissing Plaintiff a second time, and claims that afterwards, he told Gleason that "[Plaintiff] just kissed me and I think I threw up in my mouth." *Id.* ¶¶ 41, 43. In July 2018, Plaintiff participated in a New York State Department of Human Rights ("NYSDHR") investigation concerning a complaint against the State Defendants, during which Plaintiff stated that she believed that she had been sexually discriminated against at Geneseo. *Id.* ¶ 45.

In August 2018, Battles presented Plaintiff's 2017–2018 annual review, which indicated that Plaintiff needed improvement in the areas of accountability and teamwork/collaboration. *Id.* ¶ 46. At the meeting, Plaintiff raised the issue of whether the Board was a "boys [sic] club" and how to improve diversity of the Board despite potential pushback from Board members. *Id.* ¶ 47. Battles responded, "[T]hey're your problem. It's a test of your leadership." *Id.* In November

[3] robbie routenberg prefers to have their name spelled in lowercase. ECF No. 93-1 ¶ 10 n.3.

2018, Battles sanctioned an investigation in response to Geneseo employees' complaints about Plaintiff's professional misconduct, negative leadership, and targeting. *Id.* ¶¶ 51–52. Battles then placed Plaintiff on paid administrative leave pending the investigation on November 20, 2018. ECF No. 93-3 at 511. The Board members were not aware of the investigation or Plaintiff's administrative leave at the time. ECF No. 94-1 ¶ 25; ECF No. 106 ¶ 25.

In September 2018, Plaintiff requested to take leave under the Family and Medical Leave Act ("FMLA") but decided not to proceed with her request. ECF No. 93-1 ¶ 49. However, on November 30, 2018, Plaintiff notified Geneseo of her intention to take FMLA leave from November 29, 2018, to December 31, 2018. *Id.* ¶¶ 56–57; ECF No. 93-3 at 516. On December 19, 2017, Battles notified the Board of Plaintiff's leave and that, in the meantime, Johnston would be the Advancement administrator in charge. ECF No. 93-3 at 519. In January 2019, Plaintiff extended her leave to February 2019. ECF No. 93-1 ¶ 66.

On January 30, 2019, Plaintiff filed a NYSDHR complaint, alleging that until November 20, 2018, the date of her administrative leave, she experienced, *inter alia*, discrimination based on her age, marital status, and familial status, as well as sexual harassment, suspension, denial of a promotion or raise, disparate treatment regarding pay and job duties, disciplinary notice or negative performance evaluation, pretextual investigation, hostile work environment, and retaliation ("First NYSDHR Complaint"). ECF No. 93-3 at 527–50. Plaintiff later filed a charge with the Equal Employment Opportunity Commission ("EEOC") based on the First NYSDHR Complaint ("First EEOC Charge"). ECF No. 93-1 ¶ 72.

In February 2019, after returning to work, Plaintiff discussed allegations of sexual harassment, possible discrimination, and the kiss with Camiolo with routenberg, as well as retaliation and harassment that Plaintiff experienced after her administrative leave. *Id.* ¶¶ 74–75,

79. On February 25, 2019, during a meeting about the investigation into Plaintiff's allegations of sexual harassment, Battles took notes, including "Gender discrimen [sic] + Sexual Harassment," "What I saw is <u>private</u>. They will share draft report for my verification prior to finalizing. No retrib'n!" ECF No. 93-3 at 574 (emphasis in original).

In March 2019, Battles received an investigative report concerning misconduct allegations against Plaintiff, which, *inter alia*, concluded that Plaintiff misused her power. ECF No. 93-1 ¶ 81; ECF No. 93-3 at 415–25. SUNY's General Counsel shared the report with Deborah Stanley, President of SUNY Oswego, to request Stanley's "recommendation as to what the appropriate action, if any, is related to [Plaintiff's] employment." ECF No. 93-3 at 576–77. Meanwhile, Plaintiff reported two complaints from Geneseo employees about Camiolo being "abusive and demeaning, angry," where he yelled, screamed, and shouted at two female employees regarding an admissions yield event. ECF No. 93-1 ¶¶ 92–94. Battles stated that the complaints would be investigated. *Id.* ¶ 96.

On March 25, 2019, Stanley wrote that she "strongly recommend[ed] that [Plaintiff] be relieved of her duties and removed from the position of Vice President for College Advancement." ECF No. 93-3 at 579–80. On March 28, 2019, Battles provided Plaintiff with a termination letter. *Id.* at 583. Johnston was appointed as Interim College Advancement VP. *Id.* at 658. On March 29, 2019, Battles notified the Board about Plaintiff's termination and the re-appointment of Johnston as officer-in-charge. ECF No. 94-1 ¶ 29; ECF No. 106 ¶ 29.

On June 3, 2019, Plaintiff filed a second NYSDHR complaint, wherein she "fully incorporated" the First NYSDHR Complaint as reference and alleged, *inter alia*, discrimination, harassment, intimidation, termination, sexual harassment or intimidation, demotion, disparate pay, disciplinary action, denial of a promotion or pay raise, and a pretextual investigation ("Second

NYSDHR Complaint"). ECF No. 93-3 at 593–605. Plaintiff further included allegations of retaliation and discrimination that she experienced from November 20, 2018, to March 2019. *Id.* at 600–05. Plaintiff amended the Second NYSDHR Complaint on October 1, 2019, to add the basis of "discrimination/retaliation" to "match the allegations contained in the original complaint." *Id.* at 607. The Second NYSDHR Complaint later became the basis of Plaintiff's second EEOC charge ("Second EEOC Charge"). ECF No. 93-1 ¶ 114.[4]

On June 19, 2019, the NYSDHR found probable cause regarding Plaintiff's First NYSDHR Complaint and referred the case to public hearing. ECF No. 93-3 at 552–53, 641. On October 2, 2019, the NYSDHR dismissed Plaintiff's Second NYSDHR Complaint having found no probable cause. *Id.* at 609–11. On January 24, 2020, the EEOC issued a right-to-sue letter in relation to the Second EEOC Charge. ECF No. 23-2 at 1. On September 25, 2020, the NYSDHR dismissed Plaintiff's First NYSDHR Complaint following Plaintiff's request for dismissal for administrative convenience. ECF No. 93-3 at 641–45. On January 14, 2021, the EEOC issued a right-to-sue letter in relation to the First EEOC Charge. *Id.* at 647.

On January 21, 2021, Plaintiff brought this action, alleging that she suffered discrimination, hostile work environment, and retaliation, among other things. ECF No. 1. Plaintiff amended her complaint in April 2021. ECF No. 23. In May and June 2021, the State Defendants and the Board Defendants respectively moved to dismiss Plaintiff's Amended Complaint. ECF Nos. 27, 30. On March 30, 2022, the Court granted Defendants' motions in part and denied in part. ECF No. 44. On March 3, 2026, the State Defendants and the Board Defendants respectively moved for summary judgment on Plaintiff's Amended Complaint. ECF Nos. 93, 94. Plaintiff opposes both motions. ECF No. 104.

---

[4] The Court did not receive copies of the First and Second EEOC Charges.

## DISCUSSION

Plaintiff's remaining claims are as follows: (1) a § 1983 disparate treatment claim alleging discrimination on the basis of sex and/or sex stereotyping against the Board Defendants; (2) a § 1983 hostile work environment claim alleging discrimination on the basis of sex and/or sex stereotyping against the Board Defendants; (3) a § 1983 retaliation claim against the Board Defendants; (4) a Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e, *et seq*. ("Title VII"), claim of disparate treatment alleging discrimination on the basis of sex and/or sex stereotyping against SUNY, Geneseo, and the Foundation; (5) a Title VII hostile work environment claim alleging discrimination on the basis of sex and/or sex stereotyping against SUNY, Geneseo, and the Foundation; (6) a Title VII retaliation claim against SUNY, Geneseo, and the Foundation; (7) an Article 15 of the New York Human Rights Law ("NYSHRL") disparate treatment claim alleging discrimination on the basis of sex and/or sex stereotyping against Battles and the Board Defendants; (8) an NYSHRL hostile work environment claim alleging discrimination on the basis of sex and/or sex stereotyping against Battles and the Board Defendants; (9) an NYSHRL retaliation claim against Battles and the Board Defendants; (10) an NYSHRL aiding and abetting claim against Battles and the Board Defendants; and (11) a § 1985 conspiracy claim against the Board Defendants. ECF No. 23; *see* ECF No. 44.

The Court will discuss each claim below.

### I. § 1983 Claims

Plaintiff brings three § 1983 claims only against the Board Defendants, arguing disparate treatment, hostile work environment, and retaliation. ECF No. 23 ¶¶ 130–41. The Board Defendants move for summary judgment on these claims, arguing that Plaintiff cannot establish

that they are state actors whose actions are "compelled, entwined with, or traditionally a function of[] the State." ECF No. 94-38 at 26–29.

§ 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A nominally private entity can be considered a state actor and held liable under § 1983 in limited circumstances, such as when "the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies." *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) (citation modified). Here, Plaintiff relies on this close nexus test by arguing that "the record is replete with joint activity between the Board members and the College and defendant Battles, through agreement/plan, and concerted action" and that "Board members and Geneseo and its administration acted jointly." ECF No. 104 at 7.

"As relevant here, the 'joint action' or 'close nexus' test looks to whether the State has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Findley v. Carter*, No. 23-CV-00946, 2025 WL 1002386, at *3 (S.D.N.Y. Mar. 31, 2025) (quotation marks and citation omitted). "Under this line of case law, the 'mere approval or acquiescence of the State' as to some action taken by a private entity or individual is not state action." *Id.* (citation omitted). "Moreover, it is insufficient 'to plead state involvement in some activity of the person or entity alleged to have inflicted injury upon a plaintiff; rather, the plaintiff must allege that the state was involved with the activity that caused the injury giving rise to the action." *Id.* (emphases and brackets omitted) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257–58 (2d Cir. 2008)).

Plaintiff argues that the Board Defendants jointly acted with Geneseo and Battles "in exercising control over Plaintiff's hiring, compensation, work environment, performance evaluations, workload, and performance demands, and entered into an agreement under which employees, including Plaintiff, could be assigned to the Foundation." ECF No. 104 at 7. However, Plaintiff cites to no evidence to support this claim. ECF No. 104 at 7. Instead, Plaintiff concedes that the Board Defendants were not engaged in the State Defendants' decision to hire or fire Plaintiff, to decide her compensation, to provide input in her performance evaluation, or to set or modify the duties or requirements of her role as the College Advancement VP or the Executive Director of the Foundation. ECF No. 94-1 ¶¶ 13, 16, 18, 20, 25–26, 35–37; ECF No. 106 ¶¶ 13, 16, 18, 20, 25–26, 35–37. Without proof to support her argument, Plaintiff failed to "set forth specific facts showing that there is a genuine issue for trial." *Bustamente*, 100 F.4th at 432. Therefore, Plaintiff failed to raise a genuine issue of material fact that the Board Defendants are state actors.[5]

For the reasons above, summary judgment is granted regarding Plaintiff's § 1983 claims against the Board Defendants. Consequently, Plaintiff's first (§ 1983 discrimination claim), second (§ 1983 hostile work environment claim), and third (§ 1983 retaliation claim) causes of action are dismissed.[6]

---

[5] Plaintiff argues that this Court has already recognized that the Board Defendants were state actors in its previous decision. ECF No. 104 at 6; *see* ECF No. 44 at 19–20. However, that decision was based on the Board Defendants' motion to dismiss, which requires the Court to accept the facts alleged in the complaint as true and draw all reasonable inferences from those facts in favor of the non-moving party. *See Nat'l Fed. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 567 (D. Vt. 2015). This standard is different from what is applied to a motion for summary judgment, which requires that the record show there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a). Therefore, Plaintiff's argument lacks merit.

[6] Plaintiff also argues that the Board Defendants were "personally involved" in violating her rights. ECF No. 104 at 7. Because Plaintiff's § 1983 claims are dismissed due to the absence of the Board Defendants' actions that could be "fairly attributable" to the State, *Kaplan v. Cnty. of Orange*, 528 F. Supp. 3d 141, 153 (S.D.N.Y. 2021), this argument is meritless.

## II. § 1985 Conspiracy Claim

Plaintiff brings a claim under 42 U.S.C. § 1985 only against the Board Defendants, arguing that they conspired against her on the basis of sex and/or sex stereotyping to deprive Plaintiff of the equal protection of the laws. ECF No. 23 ¶¶ 179–84. The Board Defendants move for summary judgment on this claim, arguing that Plaintiff failed to establish the elements required to assert a § 1985 claim. ECF No. 94-38 at 48. The Court agrees.

A conspiracy claim under § 1985(3) requires a plaintiff to allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (citation omitted). Therefore, "in the absence of a valid § 1983 claim, there can be no § 1985 claim." *Ifedigbo v. Buffalo Pub. Schs.*, No. 13-CV-637, 2018 WL 1256197, at *17 (W.D.N.Y. Mar. 12, 2018). Because Plaintiff has no viable § 1983 claims against any of the Board Defendants, her § 1985 claim against them must necessarily be dismissed. *See O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 426 (S.D.N.Y. 2004) ("In the absence of any claim establishing a violation of civil rights, the court must also dismiss claims of conspiracy brought under § 1985.").

Accordingly, summary judgment is granted regarding Plaintiff's § 1985 conspiracy claim against the Board Defendants. Consequently, Plaintiff's sixteenth cause of action (§ 1985 conspiracy claim) is dismissed.

## III. Title VII Claims

Plaintiff raises three claims against the Foundation, SUNY, and Geneseo under Title VII: (1) disparate treatment alleging discrimination on the basis of Plaintiff's sex and/or sex stereotyping (fourth cause of action); (2) hostile work environment alleging discrimination on the basis of Plaintiff's sex and/or sex stereotyping (fifth cause of action); and (3) retaliation (sixth cause of action). ECF No. 23 ¶¶ 142–50. The State Defendants and the Board Defendants each move for summary judgment on these claims. *See* ECF Nos. 93-4, 94-38. The Court will address each argument below.

### A. Timeliness of the Title VII Claims

The State Defendants argue that summary judgment is warranted on Plaintiff's Title VII claims as they are untimely. ECF No. 93-4 at 5–8.[7] Plaintiff disagrees. ECF No. 104 at 4–5.[8]

"Individuals seeking relief under Title VII may only bring an action for employment discrimination after filing a timely charge with the EEOC and receiving a Right-To-Sue letter from that agency." *Hughes v. Elmira Coll.*, 584 F. Supp. 2d 588, 589 (W.D.N.Y. 2008) (citing 42 U.S.C. § 2000e–5(e)). "Title VII allows a plaintiff 90 days following issuance of a Right-To-Sue letter within which to commence the action." *Id.* (quoting 42 U.S.C. § 2000e–5(f)(1)). "Where a plaintiff receives multiple right-to-sue letters, and the second is based upon a charge involving

[7] While the Board Defendants did not move to dismiss the Title VII claims on the basis that they were untimely, "[w]here one defendant has successfully raised a statute of limitations defense with respect to a particular claim, a court may also dismiss the claim *sua sponte* as to similarly situated defendants." *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 375 (E.D.N.Y. 2012) (citation omitted).

[8] Plaintiff argues that the State Defendants' timeliness argument is improper as this is the first time that they raised this argument. ECF No. 104 at 5. "[A] district court may consider the merits of an affirmative defense . . . raised for the first time at the summary judgment stage, so long as the plaintiff has had an opportunity to respond." *Astor Holdings, Inc. v. Roski*, 325 F. Supp. 2d 251, 260 (S.D.N.Y. 2003) (citing *Curry v. City of Syracuse,* 316 F.3d 324, 330–31 (2d Cir. 2003)). Here, Plaintiff responded to the State Defendants' timeliness argument and did not argue that she would be prejudiced by the Court's consideration of this issue. ECF No. 104 at 4–5. Therefore, the Court will consider whether Plaintiff's Title VII claims are timely.

exactly the same facts as the first, the 90-day period is measured with reference to only the first Notice of Right to Sue, as otherwise plaintiffs could evade the statutory timing requirements simply by seeking additional Notices of Right to Sue whenever they pleased." *Jackson v. City of New York*, No. 25-CV-06466, 2026 WL 2875211, at *5 (S.D.N.Y. Sept. 24, 2026) (brackets and quotation marks omitted) (quoting *Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986) (per curiam)).

Plaintiff filed two NYSDHR complaints against Geneseo. ECF No. 93-3 at 527–50, 593–605. In the First NYSDHR Complaint, Plaintiff indicated that she experienced, *inter alia*, discrimination based on her age, marital status, and familial status, as well as sexual harassment, suspension, denial of a promotion or raise, disparate treatment regarding pay and job duties, disciplinary notice or negative performance evaluation, pretextual investigation, hostile work environment, and retaliation. *Id.* at 529–30, 539–50. Plaintiff stated that this occurred until November 20, 2018, the day she was placed on administrative leave. *Id.* at 527. The Second NYSDHR Complaint "fully incorporated" the First NYSDHR Complaint as reference, repeated the bases of discrimination, and included additional retaliation claims that allegedly occurred between November 2018 and March 2019. *Id.* at 593–605. It is undisputed that the First NYSDHR Complaint became the basis of the First EEOC Charge and that the Second NYSDHR Complaint became the basis of the Second EEOC Charge. ECF No. 93-1 ¶¶ 72, 114.

The State Defendants argue that Plaintiff's First and Second EEOC Charges are identical. ECF No. 93-4 at 6–7. The Court disagrees. While it is true that the Second NYSDHR Complaint encompassed all allegations contained in the First NYSDHR Complaint by "fully incorporat[ing]" the latter, the Second NYSDHR Complaint included additional allegations about the State Defendants' allegedly discriminatory conduct that occurred after November 20, 2018. ECF No.

93-3 at 600–05. When determining the Second NYSDHR Complaint, the NYSDHR stated that its "determination is based only on the facts related to the [Second NYSDHR] complaint and does not pertain to Complainant's prior complaint." *Id.* at 609. The EEOC adopted these findings when issuing the first right-to-sue letter on January 24, 2020. ECF No. 23-2 at 1. The first right-to-sue letter thus addressed events that occurred between November 20, 2018, and March 2019. On the other hand, the second right-to-sue letter concerned Plaintiff's First NYSDHR Complaint, thus addressing events that occurred until November 20, 2018. ECF No. 93-3 at 552–53, 641–45, 647. Therefore, each right-to-sue letter addressed different allegations.

"Where the EEOC has issued two right-to-sue letters addressing distinct allegations, each letter imposes its own ninety day time limit." *Jeter v. New York City Dep't of Educ.*, 549 F. Supp. 2d 295, 307 (E.D.N.Y. 2008). Accordingly, the 90-day limitation respectively began to run when Plaintiff received each of the right-to-sue letters. *See Hughes*, 584 F. Supp. 2d at 589. It is undisputed that Plaintiff received the second right-to-sue letter on January 14, 2021. ECF No. 23-4 at 1. Because Plaintiff filed this lawsuit on January 21, 2021, the Title VII claims against the State Defendants that occurred until November 20, 2018, are timely.

However, the date when Plaintiff received the first EEOC letter is disputed. The State Defendants argue that because the first right-to-sue letter was issued on January 24, 2020, it is presumed that Plaintiff received this letter three days later, *i.e.*, by January 27, 2020. ECF No. 93-4 at 6. Plaintiff claims that she did not receive this letter until January 20, 2021. ECF No. 104 at 4–5.

"[A] right to sue letter is normally assumed to have been received three days after its mailing, and to have been mailed on the date shown on the notice." *Dawes v. City Univ. of New York*, 193 F. App'x 59, 61 (2d Cir. 2006) (summary order) (citation and quotation marks omitted).

This "presumption is not dispositive, however, if a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (quotation marks, brackets, and citation omitted). In this case, the first right-to-sue letter includes Plaintiff's name and address, which accuracy Plaintiff does not dispute. ECF No. 23-2 at 1. Therefore, there is a presumption that Plaintiff received this letter on January 27, 2020, three days after its issuance. *See Orsaio v. New York State Dep't of Corr. & Cmty. Supervision*, No. 22-596, 2023 WL 3410554, at *2 (2d Cir. May 12, 2023) (summary order) (presuming that the EEOC right-to-sue letter was mailed on the date of its issuance as the letter included the date and the plaintiff's address).

To rebut this presumption, Plaintiff argues that she only received the letters in January 2021 upon request. ECF No. 104 at 4. For support, Plaintiff states that "there is admissible evidence of that date of receipt, in our pleadings." *Id.* at 5. However, Plaintiff does not cite to anything. The Court can only speculate that Plaintiff refers to the Amended Complaint and Plaintiff's sworn declaration. Yet, neither supports Plaintiff's argument. First, "[i]t is blackletter law that an unverified complaint is not evidence that can be relied upon at summary judgment." *E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *1 n.1 (S.D.N.Y. Sept. 28, 2023) (citation omitted). Second, Plaintiff's declaration merely states that she commenced this action in January 2021, "within a week after receiving the [EEOC's] Right to Sue Letters." ECF No. 103 ¶ 2. This statement alone fails to explain how Plaintiff did not receive the right-to-sue letters soon after they were issued and how she had to request them, only for her to receive the letters in January 2021 for the first time, as Plaintiff argues in her brief and Amended Complaint. Without more, Plaintiff's declaration "amounts to a self-serving, unsupported denial

of receipt of" the first right-to-sue letter, which is "insufficient to rebut the applicable presumptions." *Orsaio*, 2023 WL 3410554, at *2.

Without admissible evidence to support her argument that Plaintiff received the first right-to-sue letter in January 2021, the presumption that Plaintiff received the letter on January 27, 2020, prevails. Consequently, Plaintiff's commencement of this suit on January 21, 2021, falls outside the 90-day limitation for Plaintiff to have brought a Title VII claim related to allegations contained in her Second NYSDHR Complaint. Therefore, these claims are untimely.[9]

For the reasons stated above, summary judgment is granted regarding Plaintiff's Title VII claims concerning events that occurred between November 20, 2018, and March 28, 2019. Accordingly, the Court's analysis of Plaintiff's remaining Title VII claims shall be limited to her claims related to disparate treatment, hostile work environment, and retaliation that occurred until November 20, 2018.

**B. Title VII Claims Against the Foundation**

The Board Defendants argue that summary judgment is warranted on Plaintiff's remaining Title VII claims against them because Plaintiff failed to adduce any evidence to show that the Foundation was Plaintiff's employer. ECF No. 94-38 at 29–31. Plaintiff disagrees. ECF No. 104 at 6.

The existence of an employer-employee relationship is required to sustain claims under Title VII. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014). The "term 'employer'

[9] Plaintiff attempts to circumvent the 90-day limitation by arguing that the statute of limitations was extended 228 days through Executive Order 202.8. ECF No. 104 at 5 n.1. Executive Order 202.8 tolled the statute of limitations for state law claims from March 20, 2020, through November 3, 2020. *See* N.Y. Comp. Codes R. & Regs. Tit. 9 §§ 8.202.67, 8.202.8 (2020). Because Title VII is a federal claim, Executive Order 202.8 did not toll the 90-day limitation. *See Meyers v. Port Auth. of Trans Hudson (PATH)*, No. 20-CV-9645, 2023 WL 5509050, at *7 n.12 (S.D.N.Y. Aug. 25, 2023) ("Plaintiff's arguments that New York state executive orders tolled the statutes of limitations related to the causes of action in this case during the COVID-19 pandemic are without merit because these orders tolled only deadlines provided for by state law, not federal law."). Therefore, this argument has no merit.

means a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person[.]" 42 U.S.C. § 2000e(b). The "crux . . . is 'the element of control.'" *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022) (citation omitted). Therefore, where "an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities, . . . [the court] may properly conclude that a constructive employer-employee relationship exists" and that two or more entities have a joint employer relationship. *Id.* at 843–44.

The Board Defendants concede that Plaintiff "performed tasks for the Foundation." ECF No. 94-38 at 31. However, they contend that the other *Felder* factors are not satisfied because there is no evidence that the Foundation paid Plaintiff's salary, wages, or benefits, had control over Plaintiff's work, or maintained any employment record or files for Plaintiff. *Id.* at 30. In response, Plaintiff argues, "[t]he Board's aggressive claim – that there is 'no evidence' at all that the Foundation was an employer is demonstrably not true. *See* Doc. 23-1: showing (1) [Plaintiff] as a Foundation employee on page 5, and (2) Exhibit D thereto, showing more than fifteen (15) employees – including [Plaintiff] – assigned to the Foundation." ECF No. 104 at 6.

Contrary to Plaintiff's assertion, the record supports the Board Defendants' position. It is undisputed that: (1) Geneseo alone hired Plaintiff; (2) the Foundation did not set or modify the duties or requirements of Plaintiff's role as the College Advancement VP or the Executive Director of the Foundation; (3) the Board did not have input in Plaintiff's performance evaluation; (4) Plaintiff was placed on administrative leave and eventually terminated without the Board's input; (5) the Board did not decide Plaintiff's salary or benefits; and (6) Geneseo maintained Plaintiff's personnel files and Plaintiff did not submit any employment records to the Board. ECF No. 94-1 ¶¶ 13, 16, 18, 20, 25–26, 35–38; ECF No. 106 ¶¶ 13, 16, 18, 20, 25–26, 35–38. The CFA, which

Plaintiff relies on, indicates Plaintiff to be the Executive Director of the Foundation and states that the College Advancement VP is part of the "[c]ampus [p]ersonnel assigned" to support the Foundation. ECF No. 23-1 at 5, 16. This merely shows that Plaintiff's role as the College Advancement VP included acting as the Executive Director of the Foundation. It does not indicate that the Foundation had any control over Plaintiff's role as *Felder* requires. Therefore, there is no genuine issue of fact concerning whether the Foundation was Plaintiff's employer. *See Bustamente*, 100 F.4th at 432. Because the Foundation was not her employer, Plaintiff's Title VII claims against the Board Defendants must be dismissed.

For the reasons above, summary judgment is granted regarding Plaintiff's Title VII claims against the Board Defendants.

**C. Title VII Claims Against the State Defendants**

"Title VII makes it unlawful for an employer to 'fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Segal v. City Univ. of New York*, No. 18-CV-4444, 2018 WL 11487597, at *2 (E.D.N.Y. Aug. 22, 2018) (quoting 42 U.S.C. § 2000e-2(a)(1)). As relevant here, there are two theories of discrimination available under Title VII: disparate treatment and hostile work environment. *See Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

**i. Disparate Treatment**

The State Defendants move for summary judgment on Plaintiff's remaining Title VII claims against SUNY and Geneseo, arguing that Plaintiff failed to establish a *prima facie* claim of discrimination and pretext. ECF No. 93-4 at 13–23. Plaintiff contends that the record is replete with evidence of discrimination, which should be resolved by a jury. ECF No. 104 at 8–10.

"To succeed on a Title VII disparate treatment claim, a plaintiff must prove discrimination either by direct evidence of intent to discriminate or, more commonly, by indirectly showing circumstances giving rise to an inference of discrimination." *Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024) (quotation marks omitted) (quoting *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 270 (2d Cir. 2023)). When the plaintiff has only circumstantial, indirect evidence of a discriminatory motive, courts in this Circuit apply the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine "whether the plaintiff has shown sufficient evidence of discrimination to survive summary judgment." *Bart*, 96 F.4th at 569 (citation omitted).

Under the *McDonnell Douglas* framework, "a plaintiff must first make out a *prima facie* showing of discrimination by showing that: '(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Banks*, 81 F.4th at 270 (citation omitted). Once a *prima facie* case has been shown, the burden shifts to the employer who must "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* (citation omitted). Upon this articulation, the burden then shifts back to the plaintiff who must show that "the employer's stated reason for the adverse employment action was in fact pretext" for discrimination. *Id.* (quotation marks, brackets, and citation omitted). "While this framework allows the evidentiary burden to shift between parties, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 363 (2d Cir. 2025) (citation omitted).

Plaintiff argues that she experienced discrimination when the State Defendants placed her on administrative leave and paid her less than her male predecessors. ECF No. 23 ¶¶ 35–40, 97.[10] The Court will discuss each claim in turn.

**a. Administrative Leave**

Plaintiff's claim that she was discriminated by being placed on administrative leave fails because, even if assuming that Plaintiff established a *prima facie* case of discrimination, she did not show that the State Defendants' legitimate, non-discriminatory reasons were pretextual.

In response to her discrimination claim, the State Defendants argue that Plaintiff was placed on administrative leave because her subordinates alleged that Plaintiff engaged in serious professional misconduct that led to an investigation against Plaintiff. ECF No. 93-4 at 21. This constitutes a legitimate, non-discriminatory reason for placing Plaintiff on administrative leave. *See Jean v. Acme Bus Corp.*, No. CV 08-4885, 2012 WL 4171226, at *12 (E.D.N.Y. Sept. 19, 2012) (defendants suspending plaintiff "pending an investigation by the Company's customer into complaints of inappropriate conduct" constituted a legitimate, non-discriminatory reason). The State Defendants thus met their burden under *McDonell Douglas*.

The burden then shifts to Plaintiff who must show that these reasons are a pretext for wrongful discrimination under the *McDonnell Douglas* analysis. In doing so, she cannot merely demonstrate that the employer's proffered non-discriminatory reason is untrue or incomplete; she must also show that discrimination was at least a substantial motivating factor for the employer's adverse action. *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156–57 (2d Cir. 2010). Here,

[10] Plaintiff generally argues that "Defendants discriminated against [Plaintiff] and treated her disparately on account of her sex and sex/or sex stereotyping." ECF No. 23 ¶¶ 142–44. The State Defendants identify the discrimination claims to pertain to Plaintiff's (1) administrative leave and termination, and (2) disparate pay. ECF No. 93-4 at 14–23. Plaintiff does not dispute this. ECF No. 104 at 8–10. However, because Plaintiff's claims concerning events that occurred between November 20, 2018, and March 2019 are time-barred, *see* Section III.A., *supra*, Plaintiff's claims regarding the termination are time-barred as well. Therefore, the Court construes Plaintiff's discrimination claims to be based on her administrative leave and disparate pay.

Plaintiff states that "[t]he record is replete with evidence of defendants' discrimination" and relies on (1) Battles' comments to Plaintiff that "you thought you had left the South," (2) Battles' notes that state, "What I saw is <u>private</u>. They will share draft report for my verification prior to finalizing. No retrib'n!", and (3) Battles' notes that convey Plaintiff was fired for her performance when discussing her termination with the Board. ECF No. 104 at 8. Yet, none of these notes or comments show that the State Defendants' reasons were pretextual and that they acted based on a discriminatory animus against Plaintiff because of her sex. *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 410 (S.D.N.Y. 2014) (dismissing Title VII gender discrimination claims because plaintiff alleged "no facts rendering plausible the allegation that [the] alleged comments, however insensitive, were *about gender*" (emphasis in original)). Indeed, Plaintiff conclusorily states that these comments and notes show evidence of discrimination but does not explain how discrimination can be inferred. Therefore, Plaintiff fails to raise a genuine issue of material fact that the State Defendants' legitimate, non-discriminatory reasons for her administrative leave were pretextual. *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir. 1997) ("[S]weeping allegations unsupported by admissible evidence do not raise a genuine issue of material fact.").

**b. Disparate Pay**

Plaintiff also claims that the State Defendants discriminated against her by paying her less than her male predecessors, even though Plaintiff had more experience and better credentials. ECF No. 23 ¶¶ 35–40; ECF No. 104 at 9–10. The State Defendants argue that Plaintiff failed to establish a *prima facie* claim of discrimination because she failed to identify a "similarly situated" comparator. ECF No. 93-4 at 22. The Court agrees with the State Defendants.

It is well settled that "a showing of disparate treatment is a recognized method of raising an inference of discrimination for the purposes of making out a *prima facie* case." *Raspardo v.*

*Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (quotation marks and citation omitted). "Raising such an inference, however, requires the plaintiff to show that the employer treated him or her 'less favorably than a similarly situated employee' outside of the protected group." *Id.* (citations omitted). These "similarly situated individuals" must be "comparators [who] are similarly situated in all material respects." *O'Toole v. Cnty. of Orange*, 255 F. Supp. 3d 433, 439 (S.D.N.Y. 2017) (quotation marks, emphasis, and citation omitted). "The standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010) (brackets and citation omitted).

Here, Plaintiff only identifies her predecessor, Jon Hysell, as a comparator who received more pay than her even though Plaintiff was better qualified. ECF No. 23 ¶¶ 35–36; ECF No. 104 at 9–10; *see Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 115 (S.D.N.Y. 2022) (plaintiff "must actually identify a similarly situated employee; vague references" to comparable employees are not sufficient). However, Hysell is not a "similarly situated" employee who can act as an adequate comparator. Plaintiff herself states that Hysell was the "Interim Advancement VP" and the supervisor of the Communications Department. ECF No. 23 ¶¶ 35–36. Plaintiff, on the other hand, worked as the permanent College Advancement VP during her employment at Geneseo. ECF No. 93-1 ¶¶ 15, 21. It is undisputed that before Plaintiff became the permanent College Advancement VP, the position included additional duties related to communications and marketing functions; however, when Plaintiff took over, these duties were eliminated and the Advancement Department was restructured and downsized. *Id.* ¶ 8. Although Plaintiff argues that "some responsibilities had decreased, but others had increased" when she assumed the position, she does not describe, let alone provide evidence about, how she was "similarly situated" to Hysell

due to this change. ECF No. 104 at 10. Because their titles and scope of responsibilities were different, it cannot be said that Hysell and Plaintiff were "similarly situated." *See Streichert v. Town of Chester*, No. 19-CV-7133, 2022 WL 4449305, at *8 (S.D.N.Y. Sept. 23, 2022) (even though the Director of the Recreation Department also oversaw a new center, the position was not "similarly situated" to the Director of Parks and Recreation Departments that involved different duties and skillsets).

Moreover, Plaintiff's claim that Hysell received more pay than she did does not raise an inference that Plaintiff was discriminated because of her sex as it is undisputed that Hysell received an additional $15,000 stipend "only . . . because his friend the previous VP . . . told him what to ask for and who to ask." ECF No. 93-1 ¶ 25. *See Potash v. Florida Union Free Sch. Dist.,* 972 F. Supp. 2d 557, 589 (S.D.N.Y.2013) ("Plaintiff's mere subjective belief that she was discriminated against because of her gender does not sustain a gender discrimination claim." (quotation marks, brackets, and citation omitted)); *see also Krul v. DeJoy*, 705 F. Supp. 3d 5, 50, 52 (N.D.N.Y. 2023) (granting summary judgment on plaintiff's Title VII disparate treatment claims because "even viewed in the light most favorable to her, plaintiff has not marshaled evidence from which a rational factfinder could conclude that she was the victim of intentional sex discrimination on any possible disparate treatment claim"). Because Plaintiff fails to raise an inference of discrimination, she cannot establish a *prima facie* case of discrimination.[11]

[11] The State Defendants also argue that Plaintiff's discrimination claims are barred by the same actor inference, which provides that "when the hirer and firer are the same individual and termination occurs within a relatively short time span following hiring, a strong inference exists that discrimination was not a determining factor for the adverse action." ECF No. 93-4 at 11. However, as it already concluded that Plaintiff failed to raise a triable issue of fact for any of her discrimination claims, the Court will not address this argument.

Accordingly, summary judgment is granted regarding Plaintiff's Title VII disparate treatment claims against SUNY and Geneseo. Consequently, Plaintiff's fourth cause of action (Title VII claim for disparate treatment) is dismissed.

**D. Hostile Work Environment**

The State Defendants move for summary judgment on Plaintiff's remaining Title VII hostile work environment claim, arguing that Plaintiff did not establish an objectively hostile workplace or show that she was subject to discriminatory comments or actions due to her sex. ECF No. 93-4 at 23–29. Plaintiff disagrees, arguing that "[f]act issues pervade the hostile work environment analysis." ECF No. 104 at 11.

Where a plaintiff alleges a hostile work environment claim, the plaintiff must show "that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment" and that there is a basis for imputing the objectionable conduct to the employer. *Banks*, 81 F.4th at 261; *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). Of course, "[i]t is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Tolbert*, 790 F.3d at 439. Sex-based hostile work environment claims, such as the claims Plaintiff raises here, may also be supported by facially sex-neutral incidents "so long as a reasonable fact-finder could conclude that they were, in fact, based on sex. But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Alfano*, 294 F.3d at 378.

The State Defendants largely identify eight incidents upon which Plaintiff bases her hostile work environment claims, which Plaintiff does not disagree with: (1) the Board asking Plaintiff to do more work than her predecessors to get rid of her; (2) Camiolo harassing and intimidating two female employees by yelling at them; (3) Dunlap being recognized for her work to make the Board

less of a "boys' club"; (4) Walley telling Plaintiff to "be softer, less confident, let [the Board] solve [her] problems and basically act more feminine"; (5) Gleason telling Plaintiff, "you'd better perform or else"; (6) Board members regularly hugging and kissing Plaintiff on the cheek without her approval; and (7) Camiolo kissing Plaintiff. ECF No. 93-4 at 24–25; ECF No. 104 at 10–11.[12] The State Defendants argue that none of these actions were driven by a sex-based discriminatory motive. ECF No. 93-4 at 25–26. The State Defendants argue that many of the incidents and comments were sex-neutral and bore no relation to sex, *i.e.*, Plaintiff's protected characteristic. *Id.* They argue that even the incident involving hugging and kissing was not related to sex as it was done to greet men and women in the same manner. *Id.* at 26–27. The State Defendants further claim that some of the incidents and comments that do relate to Plaintiff's sex, such as Dunlap's efforts to make the Board less of a "boys' club," were not discriminatory against Plaintiff. *Id.* at 27. They further argue, and submitted evidence, that the incident between Camiolo and Plaintiff, even accepting Plaintiff's version of the facts, involved an individual who was not regularly at Plaintiff's workplace, the incident occurred at a non-work gathering, and that when Plaintiff reported the incident, it was promptly investigated. *Id.* at 27–28. The State Defendants thus argue that none of the incidents above sufficiently establish an objectively hostile work environment where allegedly discriminatory acts took place to a severe and pervasive degree. *Id.* at 28–29.

In response, Plaintiff states that she "plausibly alleg[ed] that she suffered an adverse employment action taken because of her sex." ECF No. 104 at 10. However, she does not provide

[12] The State Defendants identify two additional claims contained in Plaintiff's Amended Complaint: (1) Board members saying, "Do we really want diversity?" and "We can have diversity or money: not both" and (2) Geneseo's professors harassing and threatening Plaintiff and Battles for Plaintiff's resignation. ECF No. 93-4 at 24–25; ECF No. 23 ¶¶ 50–61, 82. However, these allegations are not included in any of the Rule 56 Statements that the parties submitted, Plaintiff does not discuss these allegations in her brief, and the parties do not point to any evidence to show that the incidents took place. Without any evidence to support these allegations, there cannot be a genuine issue of fact related to these incidents that a rational jury would find in Plaintiff's favor. *See Bustamente*, 100 F.4th at 432. Therefore, any hostile work environment claims related to these two claims are dismissed.

any evidence to support her claim that a hostile work environment existed and does not rebut the arguments or evidence that are contained in the State Defendants' motion. *Id.* at 10–11. Instead, Plaintiff explains the law on hostile work environment and rebuts the cases that are cited in the Board Defendants' motion for summary judgment. *Id.* This is insufficient to defeat the State Defendants' motion for summary judgment. *See Sheikh v. Port Auth. of New York & New Jersey*, No. 24-CV-6309, 2026 WL 2593308, at *11 (E.D.N.Y. Sept. 2, 2026) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."). To the extent that Plaintiff's arguments may be supported by evidence that she has not identified, the Court declines to comb through the record to identify arguments and evidence that will substantiate Plaintiff's position. *See Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) (stating that it is "simply not [the court's] job, at least in a counseled case" to "scour the record" to document the facts posited in the legal arguments "and serve generally as an advocate" (citation omitted)); *Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 288 (E.D.N.Y. 2013) ("[I]t is not this Court's obligation to make a party's arguments for it or fill in the blanks on that party's behalf[.]" (quotation marks and citation omitted)). Therefore, there is no genuine issue of material fact that would allow a rational jury to find that a sex-based hostile work environment existed and thus the claim must be dismissed. *See Bustamente*, 100 F.4th at 432.

For the reasons above, summary judgment is granted regarding Plaintiff's Title VII hostile work environment claims against the State Defendants. Accordingly, Plaintiff's fifth cause of action (Title VII hostile work environment claim) is dismissed.

**E. Retaliation**

The State Defendants argue that summary judgment is warranted on Plaintiff's remaining Title VII retaliation claim because she cannot establish a *prima facie* case of retaliation and because Plaintiff cannot establish pretext. ECF No. 93-4 at 31–37. Plaintiff disagrees. ECF No. 104 at 11.

Title VII makes it unlawful to retaliate against an employee for participating in protected activity. 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that "(1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023). Similar to claims for discrimination, once the *prima facie* case is established, the burden shifts to the employer to provide a legitimate, non-retaliatory justification for the adverse action. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). If that burden is met, the plaintiff must then show that the employer's justification is pretextual. *Id.*

Even assuming that Plaintiff has established a *prima facie* case of retaliation, her claim fails to survive summary judgment due to her failure to show pretext behind the State Defendants' legitimate, non-retaliatory reasons for their actions. Plaintiff was placed on administrative leave. ECF No. 93-1 ¶ 53.[13] The State Defendants argue that this adverse action was taken pending the results of an investigation into allegations brought by Plaintiff's subordinates that Plaintiff engaged

[13] Plaintiff generally argues that "Defendants retaliated against [her]," ECF No. 23 ¶ 149, and that she suffered "adverse employment actions," ECF No. 104 at 11. The State Defendants concede that Plaintiff experienced an adverse decision when she was placed on administrative leave and ultimately terminated—they do not discuss any other adverse actions taken against Plaintiff. ECF No. 93-4 at 35. Plaintiff does not dispute this. ECF No. 104 at 11. Therefore, the only adverse action at issue in this case is Plaintiff's administrative leave and termination. However, as explained above, *see* Section III.A., *supra*, Plaintiff's claims regarding the termination are time-barred. Therefore, the Court will only discuss claims pertaining to Plaintiff's administrative leave.

in "serious professional misconduct." ECF No. 93-4 at 36. Therefore, the State Defendants proffered a legitimate, non-retaliatory reason for their action. *See Senese v. Longwood Cent. Sch. Dist.*, 330 F. Supp. 3d 745, 774 (E.D.N.Y. 2018) (explanation that suspension and termination were results of an investigation following allegations of inappropriate activity constituted a legitimate, non-retaliatory reason).

The burden thus shifts back to Plaintiff to show that the State Defendants' justification is pretextual. *See Kwan*, 737 F.3d at 845. Plaintiff's response to the State Defendants' explanation is as follows: "The record is clear that [Plaintiff's] complaints of the discrimination against her preceded the adverse employment actions that the defendants took against her. . . . This record is undisputed that [Plaintiff] engaged in protected activity, after which she sustained adverse employment consequences. The many factual questions swirling around whether defendants' proffered reasons were pretextual requires denial of summary judgment now, so that these issues can be determined by a jury." ECF No. 104 at 11. This, however, does not show that the explanation that an investigation into Plaintiff's alleged misconduct led to Plaintiff's administrative leave was actually motivated by a retaliatory animus. *See Sheikh*, 2026 WL 2593308, at *11.

Plaintiff relies on *Hoover v. Shinseki* for support to argue that a jury should determine whether the State Defendants' proffered reasons are pretextual. ECF No. 104 at 11. Yet, *Hoover* still states that "the plaintiff must demonstrate that the proffered reason is a pretext for retaliation" and that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." No. 11-CV-734, 2015 WL 13960884, at *2 (W.D.N.Y. 2015) (quoting *Kwan*, 737 F.3d at 845). Here, Plaintiff made no attempt to show that the State

Defendants' legitimate, non-retaliatory reason was in fact pretextual. Plaintiff's Title VII retaliation claim thus fails.

Accordingly, summary judgment is granted regarding Plaintiff's Title VII retaliation claim against SUNY and Geneseo. Consequently, Plaintiff's sixth cause of action (Title VII claim for retaliation) is dismissed.

## IV. Supplemental Jurisdiction Over State Law Claims

With the dismissal of the federal law claims, the Court is inclined to decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims arising under the NYSHRL. *See* 28 U.S.C. § 1367(c). "[F]ederal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to form part of the same case or controversy under Article III of the United States Constitution." *See Briarpatch, Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (internal quotation marks omitted). However, a court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered"—judicial economy, convenience, fairness and comity—"will point toward declining to exercise jurisdiction of the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Here, those factors appear to weigh against exercising supplemental jurisdiction over the pendant state law claims.

Judicial economy favors declining jurisdiction because this case has not progressed beyond summary judgment. The Court acknowledges that this case has been pending in federal court for over five years. The Court has addressed motions to dismiss, discovery disputes, and now motions for summary judgment. But the Second Circuit has been clear, as a general proposition, that "if

[all] federal claims are dismissed *before trial* . . ., the state claims should be dismissed as well." *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991) (citation modified); *see Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). "Thus, district courts routinely decline to exercise jurisdiction over related state claims once summary judgment is granted for the defendant on all of the federal claims." *Garcia v. Marc Tetro, Inc.*, No. 18-CV-10391, 2020 WL 996481, at *3 (S.D.N.Y. Mar. 2, 2020). Since there are no federal claims remaining in this case and it has not proceeded beyond summary judgment, judicial economy appears to favor declining jurisdiction.

The remaining factors also appear to favor declining jurisdiction. Plaintiff may choose to commence an action in state court. *See* CPLR § 205(a) (tolling statute of limitations for state law claims during pendency of federal litigation). The parties' discovery and legal research are transferrable to any such action. And, with only NYSHRL claims remaining, the state courts are better positioned to decide the legal issues arising from Plaintiff's state law theories.

That said, the Second Circuit has cautioned against district courts declining, *sua sponte*, to exercise supplemental jurisdiction over a plaintiff's state law claims after dismissing the claims that provide the basis for subject matter jurisdiction. *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018) (concluding that district court erred in declining to exercise supplemental jurisdiction without affording parties an opportunity to be heard). Therefore, the Court will afford the parties an opportunity to brief whether the Court should exercise supplemental jurisdiction over the remaining state law claims.

## CONCLUSION

For these reasons, the State Defendants' motion for summary judgment, ECF No. 93, and the Board Defendants' motion for summary judgment, ECF No. 94, are GRANTED with respect to Plaintiff's federal law claims. The Court notifies the parties of its intent to decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, but affords the parties until December 4, 2026, to file briefs of no more than ten pages addressing whether the Court should exercise supplemental jurisdiction over the remaining state law claims.

IT IS SO ORDERED.

Dated: November 3, 2026
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York